(78 South. 58)

CRAWFORD et al. v. CHATTANOOGA SAVINGS BANK. (8 Div. 26.)

(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied Feb. 16, 1918.)

1. MORTGAGES ☞235—ASSIGNABILITY.

Under Code 1907, § 5158, providing that all contracts for the payment of money or the performance of any act or duty are assignable, a mortgage to mortgagee or her assigns, given to secure a note of a third person, payable to order of mortgagee, was assignable, and passed by the assignment of the note secured; although the mortgage provided that it should be void if the mortgagee should die before foreclosure, and that there could be no foreclosure sale before the mortgagee transferred the note secured to named mortgagor.

2. PRINCIPAL AND SURETY ☞59—LIABILITY OF SURETY.

A surety, whether as guarantor or in some other form of suretyship, may stand upon the letter of his contract.

3. GUARANTY ☞27 — CONTRACTS — CONSTRUCTION.

Where language is susceptible of two meanings, it should be taken most strongly against the guarantor and in favor of the party who has parted with his property upon the faith of the interpretation most favorable to his rights.

4. ASSIGNMENTS ☞19 — PERSONAL CONTRACTS.

Purely personal contracts are not assignable.

5. MORTGAGES ☞219—ASSIGNABILITY—NATURE OF INSTRUMENTS.

That a mortgage was given to secure a son's note to his mother-in-law, and that it provided for a transfer of the son's note by the mortgagee to named mortgagor before foreclosure sale, did not make the contract one of a personal nature, so that the mortgage could not be assigned, as a transfer of the note by the assignee would meet the requirements of the mortgage.

6. MORTGAGES ☞414—FORECLOSURE—CONDITION PRECEDENT—NOTICE OF NONPAYMENT.

As the mortgage given to secure son's note did not expressly stipulate for notice, but, on the contrary, provided absolutely and unconditionally that the debtor should pay a given sum at a stated time, the mortgagee was under no duty to give notice of nonpayment of note before proceeding to foreclose; the rule formulated for cases of commercial guaranty not applying.

7. MORTGAGES ☞425 — FORECLOSURE — LACHES.

Although no excuse was offered for delay, that bill to reform and foreclose a mortgage was filed more than six years after the due date of the debt secured would not constitute laches, where mortgage correctly described and conveyed land apart from the mistake alleged; no excuse being necessary so far as concerned foreclosure of mortgage as it stood.

8. GUARANTY ☞70—FAILURE TO ATTEMPT COLLECTION FROM PRINCIPAL OBLIGOR.

Assuming that it was the duty of the mortgagee or plaintiff, her assignee, to attempt to collect the note from the son before proceeding to foreclose mortgage given by parents to secure it, the mortgagors would be discharged only to the extent that they had been injured by such failure.

9. REFORMATION OF INSTRUMENTS ☞36(3)—PLEADING—SUFFICIENCY.

A bill, averring in substance that the mortgagors promised indemnity, and in the performance of that promise intended to execute a mortgage covering land in addition to that included by the proper description given, was, in so far as it demanded reformation, lacking in equity, in that it failed to show mutuality of mistake; there being no allegation of fraud.

10. PLEADING ☞204(2) — DEMURRER DIRECTED AGAINST ENTIRE BILL.

Where, aside from the mistake averred as ground for reformation, the mortgage conveyed land correctly described, the equity for a foreclosure of the mortgage as written was not affected, and a demurrer directed against the entire bill could not be sustained.

---

**11. REFORMATION OF INSTRUMENTS ⊛═36(1) —BILL FOR FORECLOSURE—SUFFICIENCY ON DEMURRER.**

Assuming that there was mutuality of mistake upon which depended the entire equity of the bill, as one for reformation, and that the mistake was the result of inadvertence, as averred by the bill, and not fraud, the bill was properly retained, though it failed to show a request for correction prior to filing, where it conveyed land correctly described.

**12. MORTGAGES ⊛═425 — FORECLOSURE — LACHES.**

In bill to foreclose mortgage given to secure note of third person, in the absence of some substantial change to the prejudice of defendants, mere delay, short of the period, which by virtue of the statute of limitations would bar an action at law to recover the property, will not work a bar or call for explanation on the face of the bill.

**13. MORTGAGES ⊛═427(1) — FORECLOSURE —PARTIES.**

In a bill by plaintiff holding note and mortgage by assignment to foreclose the mortgage given to secure note of third person, neither the assignor nor the third person were necessary parties; the legal title to the land having been vested by duly acknowledged conveyance.

Appeal from Chancery Court, Morgan County; James E. Horton, Jr., Judge.

Bill by the Chattanooga Savings Bank against Baxter Crawford and others to reform a mortgage, to ascertain the amount due on a note, and to foreclose. From a decree overruling demurrers to the bill, respondents appeal. Affirmed.

The bill alleges that on August 8, 1908, one C. C. Crawford, son of Baxter Crawford and wife, executed to one Mrs. Dora C. Rawlings a certain promissory note for $1,350, payable two years after date at the American National Bank at Chattanooga, and that complainant is now the owner and holder of said note by transfer thereof from said J. T. Rawlings; that the consideration thereof was money loaned by Dora C. Rawlings to C. C. Crawford, made with the understanding at the time with the said Baxter Crawford that he would indemnify said Rawlings to the extent of one half of said loan, total loan being for the sum of $2,700, and that, pursuant to said understanding, and for the purpose of complying with its promise, Baxter Crawford and his wife, on January 16, 1909, executed to Dora Rawlings a certain instrument, styled an indemnity mortgage, copy of which is attached and marked "Exhibit A," whereby and in which said Baxter Crawford and wife did grant, bargain, and convey unto said Rawlings certain real estate. (Here follows a description.) It is then alleged that in drawing the deed the scrivener made a mistake in the description of the property intended to be conveyed, and the proper description is set out. It is alleged, further, that said Dora C. Rawlings is still living, and on, to wit, August 14, 1916, satisfied and paid said indebtedness to said Chattanooga Savings Bank; that the loan made by said Dora Rawlings still remains unsatisfied by said C. C.

Crawford, and said Baxter Crawford has failed to reimburse said Dora Rawlings to the extent of $1,350, although often requested to do so. It is further alleged that said Dora Rawlings by instrument in writing has transferred, sold, and assigned said mortgage, together with the indebtedness thereby secured to orator, and that orator is now the owner and holder thereof. It is further alleged that by said mortgage it was stipulated that before any foreclosure sale of said property, and before any decree of foreclosure was entered for the sale of any part of said lands under said mortgage, said Dora Rawlings should transfer and assign to said Baxter Crawford said note for $1,350 hereinabove referred to, and that, failing to do so, there should not be a sale of said mortgaged property. Orator therefore, as owner and holder of said note, hereby offers to do equity, and files herewith said original note, and hereby offers to deliver and transfer same to said Baxter Crawford under orders of the court as a condition precedent to obtaining a decree of foreclosure. The mortgage contained this clause:

But this conveyance is an indemnity mortgage, and shall become void if Claud Crawford shall at any time repay Dora Rawlings the $2,700, or if I shall repay to her at any time the sum of $1,350, or in case she shall die before this mortgage shall be foreclosed.

The other facts sufficiently appear.

E. W. Godbey, of Decatur, for appellants. Spragins & Speake, of Huntsville, for appellee.

SAYRE, J. [1] In appellants' brief most stress is laid upon the proposition that the mortgage held by appellee was not assignable, and therefore that appellee, who filed this bill to reform and foreclose, acquired no rights by the assignment under which it claims. The instrument is peculiar in several respects. Among other things, as will be seen by reference to the reporter's statement of the facts alleged in the bill, the mortgage provides that it shall become void in case the mortgagee shall die before foreclosure; that "before any foreclosure sale of the property in this mortgage, and before any decree for the sale of any part of the lands under this mortgage, she [the mortgagee, appellee's assignor] will also transfer to me such note [the note secured by the mortgage]; failing to make such transfer of such note, there must not be a sale of such mortgaged property;" and that if the mortgagor should pay over the sum secured by the mortgage without foreclosure, "the said Mrs. Dora Rawlings [mortgagee] will transfer to me a note given to her by the said Claud C. Crawford," and upon these provisions is founded the contention that the security is nonassignable. It has been said that descendibility and assignability go hand in hand. But that generalization cannot be allowed to control

⊛═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

this case. In this, as in most of the states, the doctrine that choses in action are not assignable at law has been greatly modified by statute. Code, § 5158. As to the assignability of private contracts, it may be now stated as a general rule that rights arising out of agreements or contracts between private individuals may be assigned in the absence of some provision or stipulation in the agreement or contract to the contrary. 4 Cyc. 20–21.

[2, 3] A surety, whether as guarantor or in some other form of suretyship, may stand upon the letter of his contract. Andrews Co. v. Stowers Furniture Co., 166 Ala. 244, 52 South. 316. But, accepting for the moment appellants' contention, made in the brief in this and other connections, that they were guarantors, the rule for the interpretation of such contracts obtaining in this jurisdiction is "that where the language is susceptible of two meanings, it should be taken most strongly against the guarantor, and in favor of the party who has parted with his property upon the faith of the interpretation most favorable to his rights." Scott v. Myatt & Morse, 24 Ala. 489, 60 Am. Dec. 485. "It is settled," however, "that when the intent of the guarantor has been ascertained or the terms of the guaranty are clearly defined, the liability of the guarantor is absolutely controlled by such intent, and is never to be extended beyond the precise terms." 20 Cyc. 1426.

We have stated above those provisions of the mortgage upon which appellant bases his contention for nonassignability. It will be seen that they do not, directly at least, stipulate against assignment. On the contrary, the mortgage is given to secure a note made payable to order, and the mortgage itself is made to the mortgagee "or her assigns." So far, then, as concerns the question raised on the stipulations quoted above, our opinion upon the whole instrument is that we give full effect to the intention of the parties when we hold, as we do, that the mortgage security was assignable subject to the condition, resulting from the stipulations aforesaid, that, to become effectual through foreclosure, a decree to that end must be rendered before the death of the mortgagee. Fearnley v. Fearnley, 44 Colo. 417, 98 Pac. 819. The contract shown by appellee's bill, i. e., the mortgage security, whether a contract of guaranty or indemnity, though not negotiable under the law merchant, was nevertheless assignable subject to the conditions stipulated between the original parties and passed by the assignment of the note secured. Bayliss on Sur. & Guar. 14–16. The parties might have stipulated otherwise, but they have not done so expressly, nor, in our judgment, is an intention to that effect to be inferred.

[4, 5] Purely personal contracts are not assignable, and something is said in the brief for appellants to the effect that the arrangement between the original parties to the mortgage was a family arrangement, and it is assumed in argument that, while the mortgagor was willing to secure his son's note to his (the son's) mother-in-law and to risk her forbearance, he was unwilling to trust himself into the hands of strangers. But the averment of facts in the bill affords no sufficient foundation for this argument. There is nothing to indicate personal trust or confidence. On the contrary, for aught appearing in the bill, the stipulations left the right of assignment unimpaired except in the respects particularly pointed out in those provisions to which we have referred.

We have quoted the provisions for a transfer of the principal debtor's note to appellee's assignor. It is argued that these provisions make the contract one of a personal nature, requiring a direct assignment from the mortgagee to appellant mortgagor, and excluding the possibility of a legal fulfillment of the agreement by the assignment which the appellee offers in its bill to make as a condition of the foreclosure prayed. Our judgment on this point, foreshadowed by what has been said already, is that the mortgagors herein stipulated for results only, and that the assignment offered by the bill will secure to appellants the complete right for which they contracted when executing the security, to wit: that before any decree of foreclosure the note must be transferred, failing which, there must not be a sale of the mortgaged property.

[6] Whether the mortgage, by reason of its peculiar terms, was a contract of guaranty, or, as the parties at the time more than once labeled it, a contract of indemnity, the mortgagee was under no duty to give notice of the nonpayment of the debt secured before proceeding to foreclose. 22 Cyc. 93. If, as appellants contend at one place in their brief, the terms of this contract show it to have been one of guaranty, the label employed by the parties to the contrary notwithstanding, still no notice was expressly stipulated, nor does the law imply a necessity for notice in a case where, as here, the contract of guaranty provides absolutely and unconditionally that the debtor shall pay a given sum at a stated time. Brandt on Sur. & Guar. § 220. In view of some cases cited by appellants it seems well to say that the rule formulated for cases of commercial guaranties and requiring notice of the acceptance of credit by the guarantee or default in payment by the principal debtor in such cases (Cahuzac v. Samini, 29 Ala. 288; Brandt on Sur. & Guar. § 205 et seq.) is foreign to the case in hand.

[7, 8] This bill to reform and foreclose a mortgage was filed a little more than six years after the due date of the debt thereby secured. No excuse was offered for the delay, and appellants suggest in their argument that

appellee's rights have been lost by the laches of mere delay in filing the bill. The mortgage correctly described and conveyed land apart from the mistake alleged, and so far as concerns the equity for foreclosure of the instrument as it stands, and aside from the alleged equity for reformation, no excuse was necessary, and the suggestion is without merit. Shockley v. Christopher, 180 Ala. 140, 60 South. 317. As for the argument for laches based upon the failure of appellee or its assignor to attempt to collect the debt from the principal obligor—an argument which appears to be based upon the general demurrer and nothing more definite—it will suffice to say that no damage appears to have come to appellants from the default which the argument assumes, and, conceding for the argument the guarantee's duty as alleged, the guarantor in such cases is discharged only to the extent that he is injured. 1 Brandt, § 223.

[9] We are of opinion that the bill, in so far as it demands reformation, is lacking in equity by reason of the fact that it fails to show mutuality of mistake. The averment is, in substance, that appellants promised indemnity and in the performance of that promise intended to execute a mortgage of the certain land to include which, in addition to the land included by a proper description, appellee would now have the court to rewrite the instrument. No fraud is alleged. For aught appearing, and presumptively, appellee's assignor accepted the instrument as entirely satisfactory in the terms in which it was written. For aught alleged to the contrary, the mortgage as written afforded, or was deemed to afford, ample security. Proceeding to reform, in the absence of fraud or inequitable conduct tantamount to fraud, the court can only make the instrument express what was intended and agreed upon by both parties. 1 Jones on Mtgs. § 97.

[10] However, aside from the mistake averred, the mortgage conveyed land correctly described, as we have said, and the equity for a foreclosure of the mortgage as written is not affected by the mistake. The demurrer was directed against the bill as a whole, and for that reason could not be sustained. There can therefore be no reversal on account of the defect here conceded.

[11] Though it be assumed that there was mutuality of mistake upon which depended the entire equity of the bill as a bill for reformation, and yet that the mistake was the result of inadvertence, as the bill avers, and not fraud, the bill was properly retained, though it failed to show a request for correction prior to filing. It is said in Robbins v. Battle House Co., 74 Ala. 499, that it is "a much better rule, in all such cases, to retain the bill until the correction is made; and, if the bill was filed without previous request, and unnecessarily, let the costs be taxed against the complainant."

[12] The parties join in arguing the question whether laches should be affirmed of the mere delay in filing the bill. As to the application of these arguments to the facts averred, there seems to have been no effort to discriminate between those aspects of the bill which present in one case a question of foreclosure merely and in the other questions of reformation and foreclosure; but, after what has been heretofore said, the issue as to laches would need now to be considered only in connection with the relief sought by way of reformation, if that issue were properly raised by the demurrer. It has not been properly raised; but in no event would we be inclined to say that the delay in filing, without more, would suffice to establish the charge of laches in respect to the aforementioned part of the bill. It does not appear that there has been any change in the condition or relation of the parties, and, in the absence of some substantial change to the prejudice of the defendants, mere delay, short of the period which by virtue of the statute of limitations would bar an action at law to recover the property—in this case ejectment—will not work a bar or call for explanation on the face of the bill. First Nat. Bank v. Nelson, 106 Ala. 535, 18 South. 154; Fowler v. Alabama Iron & Steel Co., 164 Ala. 414, 51 South. 393; Woodlawn Realty & Development Co. v. Hawkins, 186 Ala. 234, 65 South. 183.

[13] We think appellee's (complainant's) bill to foreclose merely could be maintained without the presence of its assignor, the mortgagee. Appellee holds the note and mortgage by assignment, and in it the legal title to the land has been vested by a duly acknowledged conveyance. The transferor in these circumstances is not a necessary party to a bill to foreclose filed by the transferee. Prout v. Hoge, 57 Ala. 28; Langley v. Andrews, 132 Ala. 147, 31 South. 469. Nor do we see any necessity for the presence of C. C. Crawford, the person whose debt was secured by the mortgage. The authorities cited do not hold his presence to be necessary.

We believe we have thus stated our conclusion in respect to each of the assignments of error, corresponding to the several grounds of demurrer to the bill, which have been argued in the brief. We find the chancellor's decree, overruling the demurrer to appellee's bill, to be free from error.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.