237 So.2d 463

**James L. SISCO and Jack Jordan d/b/a Jordan Gas Company**

v.

**EMPIREGAS, INC. OF BELLE MINA, a Corporation.**

**8 Div. 385.**

Supreme Court of Alabama.

July 10, 1970.

Humphrey, Lutz & Smith, Huntsville, for appellants.

**74**

Hobart A. McWhorter, Jr., Birmingham, Ralph H. Ford, Huntsville, for appellee.

BLOODWORTH, Justice.

This is an appeal by respondents, Sisco and Jordan from a decree overruling demurrers to a bill seeking an injunction to enforce a "non-competition" provision in an employment contract, denying a motion to dissolve a temporary injunction, and granting a permanent injunction.

The bill of complaint filed by complainant, Empiregas, Inc. of Belle Mina, seeks to enforce by injunction the "non-competition" provision in the employment contract, and to enjoin respondent "Jack Jordan, d/b/a Jordan Gas Company" from participating with respondent Sisco in selling and distributing liquid-petroleum gas (within the prohibited time period and area) and from utilizing information imparted to him by Sisco.

The trial court granted a temporary injunction without a hearing. Whereupon, respondents filed a motion to dissolve and demurrers, and after a hearing, the trial court denied the motion to dissolve, overruled the demurrers, and "permanently" enjoined respondents Sisco and Jordan in accordance with complainant's prayer for relief.

The bill of complaint alleges that complainant Empiregas, Inc. of Belle Mina is engaged in the business of distributing and selling liquefied petroleum gas in Alabama; that Empiregas is a stockholder in and distributee of certain of the assets of Gas and Chemicals, Inc., which corporation preceded Empiregas in the LP gas business in Madison and surrounding counties; that one of the assets Gas and Chemicals transferred and distributed to Empiregas was the employment contract executed by Gas and Chemicals and James Sisco on March 24, 1967; that Empiregas has continued to conduct the business as it was conducted by Gas and Chemicals, that is, by means of route salesmen with whom customers establish a regular custom of trade and through whom customers ordinarily have their sole contact with Empiregas; that following the execution of the contract with Gas and Chemicals Sisco was employed by it as a route salesman until January, 1969; that from January, 1969 to June 30, 1969 Sisco was employed by and operated as a salesman for Empiregas in the same area in and around Madison County; that on June 30, 1969, "Sisco voluntarily terminated his employment with Empiregas, which employment up to said termination was governed by and conducted pursuant to the terms and provisions of the Employment Contract. Empiregas complied with and performed the obligation of the Employment Contract on its part during Sisco's

employment with Empiregas as a salesman aforesaid." The bill further alleges that while working for Empiregas, Sisco obtained the names and addresses of their customers, called upon them and made their personal acquaintance; that he secured additional customers for Empiregas; that he gained knowledge of the business methods of Empiregas; that he has used this knowledge in competition with Empiregas in violation of the employment contract; and that, in association with Jack Jordan, Sisco has engaged in the LP gas business since the termination of his employment with Empiregas. The employment contract, made a part of the bill, contains the "non-competition provision" whereby respondent James Sisco agreed:

"* * * not to engage in, for his own account or for others, in any manner whatsoever, the sale of or handling of LP-Gas and related items for a period of five (5) years from the date of termination of this Agreement within a fifty (50) mile radius of Jeff, Alabama."

In addition, it provides for the termination of the employment relationship by either party on thirty days' notice.

We consider the primary issues before us on this appeal to be: I. Whether the contract (containing the "non-competition" provision) sought to be enforced against Sisco was, under the pleadings and proof, one personal to Gas and Chemicals (the complainant Empiregas' purported assignor) and therefore incapable of effective assignment; and II. whether the bill alleges sufficient facts to show the creation of a new contract by and between Empiregas (the purported assignee) and Sisco by "adoption" of all the terms of the contract between Sisco and Gas and Chemicals.

For the reasons which hereinafter appear, we think that Sisco had contracted for the personal performance of Gas and Chemicals, Inc., and that therefore the duties of Gas and Chemicals, Inc., under that contract were not delegable. Consequently, complainant Empiregas, Inc. of Belle Mina had no right to performance from Sisco since his performance was conditioned on personal performance by Gas and Chemicals, Inc., and that performance was not rendered. Being further convinced that the allegations of the bill are insufficient to show an "adoption," we conclude that the trial court's overruling the demurrers to the bill constituted reversible error.

At the outset we note that Empiregas agrees with Sisco and Jordan's contention that the trial court's decree granting a permanent injunction against them must be reversed since the propriety of a permanent injunction was not before the trial court in a hearing on motion to dissolve a temporary injunction. Thus, we reverse also as to the granting of the permanent injunction.

I.

In assignment of error 1, Sisco and Jordan urge the overruling of their demurrers as reversible error. Ground 3 of the demurrers states:

"For that it affirmatively appears that the contract, of which Exhibit A to the bill of complaint is a copy, is a contract for personal services and is not assignable."

Empiregas contends that the rule forbidding the assignment of personal services contracts means only that the "duty" of a party who has contracted to perform personally (the employee) cannot be performed by another (a delegate), that the rule does not prevent the party to whom the personal performance is due (the employer) from assigning his rights and delegating his duties. Under this view, it argues, the fact that Sisco had contracted to perform personally and could not delegate *his duties* did not prevent Gas and Chemicals from assigning *its rights* and delegating *its duties* under the contract.

It is our view, hereinafter elaborated, that the performance owed by both Sisco and Gas and Chemicals was personal, and neither could delegate his (its) "duties."[1]

We commence with the general proposition that personal service contracts are not assignable. 6 C.J.S. Assignments § 26, p. 1074; Crawford v. Chattanooga Savings Bank, 201 Ala. 282, 78 So. 58 (1917). We think this bill shows on its face that the contract here at issue involved a relationship of personal confidence between the parties. No other conclusion seems logical where the contract by its language permits the employer to discharge the employee on thirty days' notice and then to prevent him for five years from pursuing his livelihood over an area we judicially know to encompass some 7,850 square miles and to include the cities of Huntsville, Scottsboro, Guntersville, Albertville, Cullman, Hartselle, Decatur, Athens, Moulton, and a considerable portion of Middle Tennessee. Surely, one would not be presumed to have intended to commit himself into the hands of a stranger so empowered, and the bill shows on its face that Gas and Chemicals was no stranger to Sisco, having been his employer for some two years and eight months prior to his execution of the contract at issue. These circumstances, we feel, demonstrate that Sisco relied upon the uniqueness of his corporate employer and their relationship of mutual confidence when he entered into this contract.

Numerous authorities support our conclusion that this is a personal contract. In Schweiger v. Hoch, 223 So.2d 557 (District Ct. of App. of Fla. 1969), the contract of an employee of an accounting firm, entered into two or three weeks after he began work, was held to be personal and thus unassignable to a successor accounting firm upon dissolution. The court said:

" 'Knowing the character and personality of his master, the employee might be ready and willing to safeguard the trust which his employer has reposed in him by granting a restrictive covenant against leaving that employment. *His confidence in his employer might be such that he could scarcely anticipate any rupture between them.* As to that particular employer, if a break did occur, he might be willing to pledge that his fidelity would continue after the employment had ended, even at the cost of forsaking the vocation for which he was best suited. This does not mean that he was willing to suffer this restraint for the benefit of a stranger to the original undertaking.' " [Emphasis supplied]

quoting Smith, Bell & Hauck, Inc. v. Cullins, 123 Vt. 96, 183 A.2d 528 (1962). In the last-quoted case the corporate distributee of all the assets of a dissolved corporation sought to enforce, as assignee, the non-competition clause of a contract entered into by the employee and the dissolved corporation a few months after the employment began. The Supreme Court of Vermont held the contract to be personal and unassignable, saying further:

" * * * The employee entrusted to his employer the important privilege of discharging him at will and without cause. This eventuality would at once invoke the severe detriment of foreclosing him from employment elsewhere in that community in his chosen occupation. The restriction, in its own terms, was designed to protect a fiduciary relationship which emanated solely from the master and servant relationship."

In Oak Cliff Ice Delivery Co. v. Peterson, 300 S.W. 107, 109 (Ct. of Civ.App. Texas 1927), a contract to drive an ice wagon was held personal and therefore unassignable by the employer Williams. The court said:

---

1. We reserve judgment on the question whether the party who owes no "duty" of personal performance may delegate his duties to a third party.

"* * * The plenary authority conferred by appellee upon said Williams to discharge him manifested the intention of the parties that their contract should not be assignable, in that in making the contract appellee selected Williams as the one to whom he was willing to commit such power, to terminate the contract in so far as appellee was concerned, * * *."

Whether a contract is personal is largely a matter of the intention of the parties thereto [Smith, Bell & Hauck, Inc. v. Cullins, supra], and the "intention of the parties to a written contract is derived from the provisions of the contract * * *." Todd v. Devaney, 265 Ala. 486, 92 So.2d 24 (1957).

Thus, it results that the assignee's (Empiregas') right to performance from Sisco (including performance of his covenant not to compete) is conditional upon personal performance of its duties by Gas and Chemicals. 4 Corbin on Contracts, pp. 439–441. The bill does not allege that Gas and Chemicals has acted as Sisco's employer since the alleged assignment. On the contrary, it is clear that the alleged "assignment" of the contract was an attempt by Gas and Chemicals both to assign its "rights" and delegate its "duties." Indeed, the bill shows that Gas and Chemicals is in dissolution and liquidation and obviously could not perform its "duties" and obligations under the contract. Therefore, the conditions of Sisco's duty to perform having failed, the bill shows that Empiregas, Inc. of Belle Mina has no right to performance from Sisco.

■ We do not wish to be understood as saying that an employer may not provide for assignment of its rights and delegation of its duties under a personal service employment contract. On the contrary, an employer wishing to provide for such contingency can expressly so provide in the contract.

Two cases placing great emphasis upon an assignability provision in the employ-

ment contract are Abalene Pest Control Service, Inc. v. Hall, 126 Vt. 1, 220 A.2d 717 (1966), and Orkin Exterminating Company v. Burnett, 259 Iowa 1218, 146 N.W. 2d 320 (1966). However, the clause in neither case is a model of clarity. While these clauses make it clear that the employer's "rights" are assignable, they do not clearly provide that all of the employer's "duties" may be discharged by a delegate of his choosing. We think the latter provision is an essential one.

## II.

■ Two additional situations are frequently cited as exceptions to the so-called rule against the assignment of personal services contracts. See, e. g., 6 Am. Jur.2d, Assignments, § 11, pp. 196–197. First, it is said that the employee's "consent" to the assignment permits the attempted assignee to enforce the contract. Second, it is said that the employee's conduct in continuing in the employ of the assignee permits the assignee to enforce the contract, the theory being that the employee has thus "adopted" or "ratified" the contract. We think, however, that these two situations are improperly termed "exceptions." It appears to us that the effect of the employee's "consent" or of his continuing in the employment of the assignor ("adoption" or "ratification") is to create a new contract between employee and assignee rather than merely to permit the assignment of the old contract. Mr. Justice Holmes gave voice to this theory in American Colortype Co. v. Continental Colortype Co., 188 U.S. 104, 23 S.Ct. 265, 47 L.Ed. 404 (1903):

"* * * It is true that the starting point for the relations between the plaintiff and its employes was what purported to be an assignment. It is true that the bill emphasizes this aspect of the case and states the evidence more accurately than the result. But those circumstances do not change the legal conclusion from the facts set forth. The allegations show that, having the old

contract before them, the parties came together under a new agreement, which was determined by reference to the terms of that contract, but which none the less was personal and immediate. Maas, Fierlein and Freese, who were under contract with the National Colortype Company, agreed to work for the plaintiff instead. The plaintiff accepted their promises and gave a consideration for them by undertaking personally to pay. It does not matter that the bill calls this becoming substituted as the employer and as a party to the old contracts. *The plaintiff could not become substituted to a strictly personal relation. All that it could do was to enter into a new one which was exactly like that which had existed before. Service is like marriage, which, in the old law, was a species of it.* It may be repeated, but substitution is unknown. Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U.S. 379, 387, 8 S.Ct. 1308, 32 L.Ed. 246." [Emphasis supplied]

The gist of Justice Holmes' view is that the contract which the assignee employer seeks to enforce is a new contract between it and the employee. The employee's "consent" is taken as a manifestation of his assent to a new contract with his new employer, the detailed terms of which are determinable by reference to the old contract.

These considerations are made pertinent to the case at bar by respondents Sisco and Jordan's argument under assignments of error 1 and 2, specifically, the overruling of ground 8 of their demurrers, which states:

"For aught that appears, Empiregas, Inc. of Belle Mina is not the assignee of Gas and Chemicals, Inc., and has no right to enforce the contract which is the basis of the complaint."

Under these assignments, they contend that the allegations averring an "adoption" or "ratification" by Sisco and Empiregas of the contract between Sisco and Gas

and Chemicals are insufficient for that purpose. We agree. The only allegations in the bill to which the theory of "adoption" could be referred are as follows:

"* * * Sisco was employed by and operated as a salesman for Empiregas pursuant to the terms and provisions of the Employment Contract in the same area as he had previously been so employed by and operated as a salesman for Gas & Chemicals * * *"

and

"* * * which employment up to said termination was governed by and conducted pursuant to the terms and provisions of the Employment Contract. * * *"

To say that parties have adopted a contract, is, as pointed out by Mr. Justice Holmes, supra, merely to say that they have entered into a new contract, referable to the old for its terms. The manifestation of assent required for the creation of this new contract must be as unambiguous and unequivocal as that required to create any other contract. 1 Williston on Contracts, § 72, p. 235.

Contractual obligations partake of a solemn character, and we should be zealous to ensure that no one is fettered who has not manifested his assent to be. The bill did not expressly allege that Sisco and Empiregas entered into a new contract embracing all the terms of the contract between Sisco and Gas and Chemicals, nor did it allege conduct on the part of Sisco and Empiregas sufficiently unambiguous to constitute mutual assent to the terms of the Sisco-Gas and Chemicals contract. Indeed, as pointed out by Sisco and Jordan in their brief:

"* * * even though the relationship between the parties might have turned out to be that provided for by the terms and conditions of the contract sued on, this does not mean that the parties adopted such contract, and in order to show such an adoption it would be necessary to aver that both parties

adopted and consented to abide by that exact contract."

Although this contention is advanced under a rather general ground of demurrer, we think this is excusable in view of the rather general allegation of facts to show the "adoption" theory.

For the reasons given, we think the demurrers to the bill should have been sustained; consequently we reverse as to the court's overruling of the demurrers—without prejudice, of course, to Empiregas' right to amend its bill to state a cognizable equitable theory of relief.

Since we consider the bill to be demurrable, it will not support a temporary injunction, and the decree of the trial court must be reversed and remanded for the entry of a decree not inconsistent with this opinion.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, COLEMAN and McCALL, JJ., concur.