885 So.2d 772 (2003)
CONFERENCE AMERICA, INC.
v.
TELECOMMUNICATIONS COOPERATIVE NETWORK, INC., et al.
1021047.
Supreme Court of Alabama.
November 21, 2003.
As Modified on Denial of Rehearing January 30, 2004.
*774 Thomas S. Lawson, Jr., and Richard H. Allen of Capell & Howard, P.C., Montgomery; and Richard A. Ball, Jr., of Ball, Ball, Matthews & Novak, P.A., Montgomery, for appellant.
C. Lee Reeves and Anthony R. Smith of Sirote & Permutt, P.C., Birmingham; and Marvin H. Campbell, Montgomery, for appellees.
HOUSTON, Justice.
Conference America, Inc., appeals from the Montgomery Circuit Court's judgment on a jury verdict in favor of Telecommunications Cooperative Network ("New TCN") and one of its employees, Chris Lipscomb. This case involves, among other issues: 1) whether a contract, not for unique personal services, that is silent on the issue of assignability can be assigned, and 2) whether a juror's misrepresentations during voir dire were significantly material so as to warrant a new trial. We hold that the contract in this case was assignable, and we affirm the trial court's judgment relating to that issue and to Conference America's equitable claims. However, we hold that Conference America is entitled to a new trial on the remaining issues based on the misconduct of one of the jury members.

I. Relevant Facts
Conference America is an Alabama corporation that provides conference-call services. In 1995, Conference America was selected by Telecommunications Cooperative Network of New York, Inc. ("Old TCN"), a not-for-profit membership cooperative that assisted nonprofit entities in using telecommunications services, to provide conference-call services to members of Old TCN.[1]
In 1997, Conference America and Old TCN entered into an agreement ("the 1997 agreement") pursuant to which Conference America would pay Old TCN a 24% commission on the services Conference America provided to members of Old TCN. The term of the 1997 agreement extended from January 27, 1997, through December 31, 2000. The 1997 agreement was silent as to whether the agreement was assignable.
By early 1998, Old TCN was having financial difficulties and was close to filing a petition for involuntary bankruptcy. Around that time, David Altshuler, who had served as vice chairman on the board of directors of Old TCN through July 1997, formed a for-profit corporation named Telecommunications Management, Inc. ("TMI"). Pursuant to a management agreement between Old TCN and TMI, Altshuler, as president of TMI, took over the management of Old TCN. In July 1998, TMI changed its name to Telecommunications Cooperative Network, Inc. ("New TCN"). In September 1998, the assets of Old TCNincluding its name, its goodwill, and the 1997 agreementwere transferred or assigned to New TCN and Old TCN was subsequently dissolved. New TCN is a for-profit corporation, run by Altshuler as its sole officer and director.[2] Conference America claims to have had no knowledge of the transfer of assets of Old TCN to New TCN, of the *775 dissolution of Old TCN, or of the creation of New TCN.
After New TCN acquired the assets of Old TCN, Conference America continued to provide services and to remit commissions to New TCN pursuant to its 1997 agreement with Old TCN. In December 1998, Conference America executed another agreement ("the 1998 agreement") virtually identical to the 1997 agreement that, among other things, extended the term of the 1997 agreement through September 30, 2002.[3] The 1998 agreement referred to "TCN"; it did not distinguish between "Old" TCN and "New" TCN. According to Conference America, New TCN held itself out as being the same company as the dissolved Old TCN.
Subsequently, the relationship between Conference America and New TCN became strained; the reasons for the strain, which are disputed by the parties, are not relevant here. Conference America sued New TCN, Altshuler, Chris Lipscomb,[4] and others, seeking, among other things, 1) damages for fraud, breach of contract, repudiation of contract, and moneys paid by mistake under a void assignment of the 1997 agreement, and 2) declaratory and injunctive relief. New TCN and Lipscomb each filed a counterclaim. Following the trial, however, the only claims that went to the jury were Conference America's breach-of-contract and fraud claims, New TCN's counterclaim alleging breach of contract and repudiation of contract, and Lipscomb's counterclaim alleging breach of contract. Relevant to our discussion is the fact that the trial court granted New TCN's motion for a judgment as a matter of law as to Conference America's claim that it was entitled to moneys paid to New TCN by mistake because, it argued, the 1997 agreement was unassignable.
The jury returned a verdict for New TCN and Lipscomb on Conference America's breach-of-contract and fraud claims and on their counterclaims. The jury awarded damages on the counterclaims in the amounts of $1,007,499.97, and $1,000 to New TCN and Lipscomb, respectively. The trial court entered a judgment on this verdict.
Following the verdict, Conference America discovered that a juror had given erroneous answers in his questionnaire and on voir dire examination. It confirmed this fact through investigation and memorialized its discovery and initial investigation in a letter to the Court dated November 8, 2002, enclosing its investigative material.
On November 22, 2002, Conference America filed motions for a judgment as a matter of law, a new trial, and to alter, amend, or vacate the judgment, asserting, among other things, juror misconduct and the alleged unassignability of the 1997 agreement. Following two hearings (including an evidentiary hearing on the juror-misconduct issue), the trial court denied Conference America's postjudgment motions. This appeal followed.

II. Analysis
Conference America raises three issues on appeal. First, it contends that the 1997 agreement was not assignable to New TCN. Second, Conference America contends that it was entitled to a new trial based upon juror misconduct. Third, Conference America contends it was entitled to 1) a judgment as a matter of law as to New TCN's counterclaims or, in the alternative, 2) a new trial based on the claim *776 that the jury's verdict was against the great weight of the evidence.

A. Assignability of the 1997 Agreement
At trial, the jury awarded New TCN $1,007,499.97 on its counterclaim against Conference America alleging that Conference America had breached the 1997 agreement. Conference America contends that New TCN's right to recover under the 1997 agreement hinges on whether that agreement was assignable without Conference America's knowledge or consent; we hold that it was so assignable.
As stated above, the 1997 agreement is silent as to its assignability. In Sisco v. Empiregas, Inc. of Belle Mina, 286 Ala. 72, 76, 237 So.2d 463, 466 (1970), this Court noted "the general proposition that personal service contracts are not assignable." In Sisco, we noted that personal service contracts involve "a relationship of personal confidence between the parties." 286 Ala. at 76, 237 So.2d at 466. Such a relationship is one in which a party would have "a substantial interest in having that [particular] person perform or control the acts promised." Restatement (Second) of Contracts § 318(2)(1979). This case, however, does not involve such a personal relationship; rather, this case involves the performance of an agreement by the unidentified agents, servants, or employees of an impersonal corporation to provide teleconferencing services to customers of another impersonal corporation; contracts for such works are not personal and may be assigned.[5]
Based on the above, we hold that the trial court's rulings based on the assignability of the 1997 agreement were correct.

B. Juror Misconduct
The trial court refused to grant Conference America a new trial based upon alleged juror misconduct. Our standard of review on this issue is whether the trial court exceeded its discretion in refusing to grant a new trial. Acceptance Ins. Co. v. Brown, 832 So.2d 1, 12 (Ala.2001)("The denial of a motion for a new trial is within the sound discretion of the trial court.").
The jury foreman, H.C., a Montgomery pastor who was not a member of the original jury pool, failed to respond to numerous questions posed during voir dire examination. The trial court asked if any member of the venire had been employed by a business entity referred to as "Call Points," which provided teleconferencing services. The name, Call Points, was repeated four times. H.C. did not respond, although he had in fact been employed by Call Points. The trial court explained the nature of a teleconferencing company and asked whether any member of the venire had ever been employed by a teleconferencing *777 company. Some members of the venire responded to the question; however, H.C., who had in fact been employed by a teleconferencing company, did not respond. The trial court also asked if any member of the venire had been involved in a contract dispute. H.C. did not respond. In fact, H.C. had had three judgments rendered against him in three collection actions and he was involved in an ongoing paternity and child-support case. He had been held in contempt twice in the paternity action. The juror questionnaire asked if the prospective juror had ever been arrested for or convicted of a crime. H.C. responded that he had not; in fact, H.C. had been arrested, convicted, and jailed on a bad-check charge.
"Not every failure of a prospective juror to respond correctly to a voir dire question will entitle the losing party to a new trial." McKowan v. Bentley, 773 So.2d 990, 996 (Ala.1999). However, where "improper responses or lack of responses by prospective jurors on voir dire result[] in probable prejudice" to the losing party, a new trial is warranted. Freeman v. Hall, 286 Ala. 161, 166, 238 So.2d 330, 335 (1970).
In Freeman, we noted:
"Although the factors upon which the trial court's determination of prejudice is made must necessarily vary from case to case, some of the factors which other courts have considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about."
286 Ala. at 167, 238 So.2d at 336. In Gold Kist v. Brown, 495 So.2d 540, 545 (Ala.1986), a case involving a collision between two trucks, a juror failed to disclose that he was a truck driver. In holding that the trial court did not exceed its discretion in granting a new trial, this Court quoted the trial court's definition of a material fact as "`one which an attorney [,] acting as a reasonably competent attorney, would consider important in making the decision whether or not to excuse a prospective juror.'" 495 So.2d at 545.
We hold that the juror misconduct in this case clearly warrants a new trial. This case involves a contract dispute. Juror H.C. failed to disclose that he had been involved in at least three contract disputes and that he had been a defendant in legal actions involving those contract disputes. H.C. failed to reveal that he had been arrested, jailed, and convicted of a criminal offense. H.C. had been charged with being in arrears in his child support and was a party in a paternity action; in the paternity/child-support action he had been served with summons, complaints, and various orders 11 times and had appeared before the circuit court 7 times. There is no indication that the matters inquired about were temporally remote, that the questions posed to H.C. were ambiguous, or that H.C.'s misrepresentations were merely "inadvertent." Furthermore, given the subject matter of the action and the parties involved (teleconferencing companies), the materiality of the matters inquired about seems obvious and was certainly of the type that "an attorney[,] acting as a reasonable competent attorney, would consider important in making the decision whether or not to excuse" H.C., who ultimately served as the jury foreman. Under these circumstances, the trial court exceeded its discretion in denying Conference America's motion for a new trial.
We also hold that the trial court's resolution of the equitable claims in this case is *778 unaffected by any juror misconduct and its judgment as to those claims is affirmed.[6]

C. Conference America's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial
Conference America contends that even if the 1997 agreement was properly assigned to New TCN, Conference America is entitled to a judgment as a matter of law as to the two counts in New TCN's counterclaim that went to the jury: breach of contract and repudiation of contract. Conference America argues that if the 1997 agreement was assigned to New TCN, then New TCN became Conference America's agent and can have no recovery based on the 1997 agreement because New TCN breached the agreement by violating its implicit fiduciary duties[7] to Conference America by 1) soliciting Conference America employees and 2) establishing C3, an entity that competed with Conference America.
"`The standard of review applicable to a motion for directed verdict or judgment notwithstanding the verdict [now referred to as a preverdict and a postverdict motion for a judgment as a matter of law] is identical to the standard used by the trial court in granting or denying the motions initially. Thus, when reviewing the trial court's ruling on either motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the non-movant.'"
Glenlakes Realty Co. v. Norwood, 721 So.2d 174, 177 (Ala.1998) (quoting Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala.1988)). The issue, therefore, is whether, when viewed in the light most favorable to New TCN, there was "sufficient evidence to produce a conflict warranting jury consideration" as to whether New TCN was an "agent" of Conference America, and, if so, whether New TCN breached any implicit fiduciary duties so that New TCN may recover under the 1997 agreement.
Whether one is an "agent" of another "`is to be determined by the facts, and not by how the parties may characterize the relationship,'" Mardis v. Ford Motor Credit Co., 642 So.2d 701, 705 (Ala.1994) (quoting Butler v. Aetna Fin. Co., 587 So.2d 308, 311 (Ala.1991)), and is "generally a question of fact to be determined by the trier of fact." Malmberg v. American Honda Motor Co., Inc., 644 So.2d 888, 890 (Ala.1994). Essentially, Conference America claims that New TCN, as its "agent," owed a duty not to compete with Conference America with regard to employees or services. However, New TCN presented evidence indicating 1) that there was no "exclusive" relationship between New TCN and Conference America that would have made Conference America the "sole" vendor of choice, 2) that New TCN *779 did not actually solicit employees of Conference America, and 3) that New TCN did not begin competing with Conference America until after Conference America allegedly breached its contractual obligations. After reviewing the record and examining the evidence in the light most favorable to New TCN, as we must, we hold that the evidence raised a conflict sufficient to send this issue to the jury. Therefore, the trial court did not err in denying Conference America's motion for judgment as a matter of law regarding New TCN's counterclaims.
Additionally, given our disposition of this case, we do not reach Conference America's contention that it was entitled to a new trial based on the claim that the jury's verdict was against the great weight of the evidence.

III. Conclusion
Based on the foregoing, we affirm the trial court's judgment as to the equitable claims and its rulings as to the assignability of the 1997 agreement and as to Conference America's motion for a judgment as a matter of law. We reverse the trial court's order insofar as it denied Conference America's motion for a new trial based on juror misconduct, and we remand the cause for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
SEE, BROWN, and STUART, JJ., concur.
LYONS, HARWOOD, and WOODALL, JJ., concur in part and concur in the result.
JOHNSTONE, J., concurs in the rationale in part but dissents from the judgment.
HARWOOD, Justice (concurring in part and concurring in the result).
I concur fully in all portions of the main opinion except the one captioned "B. Juror Misconduct." I concur in all other portions and aspects of the opinion, and the judgment entered.
I agree that the failure of juror H.C. to respond to the unambiguous questions concerning possible prior employment with Call Points in particular, and with any teleconferencing company in general, would ordinarily warrant a new trial or a reversal on appeal. However, I conclude that Conference America, by not acting on the information concerning H.C. that had come to its attention before the jury returned its verdict, waived that ground.
H.C. had worked as an operator for Call Points. His supervisor during his employment, Yvonne McCrary, was in attendance at the trial on Thursday, October 24, 2002, and recognized H.C. but could not recall his name or the nature of their past association. On Friday afternoon, October 25, however, she was again in the courtroom, watching the jury while it was charged. As the jury filed out to commence it deliberations, she recognized H.C. as one of the operators she had supervised at Call Points. She then entered a side room of the courthouse where the attorneys for Conference America, some Conference America employees, and Robert Pirnie, a shareholder and officer of Conference America, were conferring. Pirnie was Conference America's designated trial representative. McCrary whispered to Pirnie her belief that H.C. was a former operator at Conference America, described his physical appearance to Pirnie, and gave Pirnie his name. Pirnie just said "OK," and expressed no surprise at the disclosure. Pirnie did not then share that information with the attorneys nor did he do so at anytime over the ensuing weekend. *780 Rather, when he was again meeting with the attorneys at their office during the late afternoon of Monday, October 28, he mentioned the situation to one of Conference America's trial counsel. No follow-up of any sort occurred until after the jury had returned its verdict, on Tuesday morning, following an additional couple of hours of deliberations.
In Eaton v. Horton, 565 So.2d 183 (Ala.1990), juror Goodwin failed to acknowledge that he was a plaintiff in a pending action although defense counsel had inquired of the venire about that possibility on voir dire. During the course of the trial, Goodwin called his pending litigation to the attention of the trial judge, and the attorneys were then informed by the judge that one of the jurors was involved in a case that had been settled. Defense counsel made no attempt to question the juror or pursue the matter in any other way. In subsequently refusing to reverse the verdict adverse to the defendant on the basis of juror Goodwin's failure to respond, this Court explained:
"Once [the defendant] was informed of these facts, he had a duty to further investigate the situation and voice his objection. Upon receiving this information, [the defendant] made no objections to the juror's continued service. Furthermore, [the defendant] made no inquiries into the nature of the lawsuit or into Juror Goodwin's suitability as a juror because of his involvement in that lawsuit. If [the defendant] intended to raise an objection to Goodwin's silence on voir dire, he should have done so promptly. Instead, we hold that, having concluded the case with notice of the facts and having taken the chance of a favorable verdict, [the defendant] has waived any objection to Goodwin's failure to respond; thus, the trial court did not err in denying the JNOV/new trial motion."
565 So.2d at 185. See also Oliver v. Herron, 106 Ala. 639, 17 So. 387 (1905); Alabama Lumber Co. v. Cross, 152 Ala. 562, 44 So. 563 (1907); Jones v. Coley, 219 Ala. 23, 121 So. 24 (1929); Hood v. Kelly, 285 Ala. 337, 231 So.2d 901 (1970); Williams v. Dan River Mills, Inc., 286 Ala. 703, 246 So.2d 431 (1971); Moon v. Nolen, 294 Ala. 454, 318 So.2d 690 (1975); and Turnbow v. Kustom Kreation Vans, 535 So.2d 132 (Ala.1988). Information imparted directly to a party, or to that party's attorney, equally can occasion a waiver when no further action is taken.
Although I conclude that a waiver occurred, I further conclude that it was only a partial waiver. Any follow-up on the employment information would not likely have developed the facts concerning the other information H.C. had withheld relating to his prior civil litigation and his involvement in criminal prosecutions. H.C.'s failures to respond were of sufficient importance to the jury selection strategy of Conference America, as explained during the testimony of its trial counsel at the hearing conducted on Conference America's postjudgment motions, as to warrant a new trial based on them alone. Accordingly, I concur in the result reached with respect to the effect on appeal of H.C.'s withheld information.
LYONS and WOODALL, JJ., concur.
JOHNSTONE, Justice (concurring in the rationale in part but dissenting from the judgment).
I concur in the rationale and holdings on the assignability of the 1997 agreement. I further concur in the rationale and holdings on the issue of whether the trial court erred in denying the motion of Conference America for judgment as a matter of law. I respectfully dissent, however, from reversing on the ground of juror misconduct. *781 The record establishes, and TCN has demonstrated, that Conference America waived its claim of juror misconduct.
During closing arguments on the Friday preceding the Tuesday when the jury returned its verdict, Conference America recognized the juror, H.C., as a former employee of Call Points, a teleconferencing business previously owned by the family of Bob Pirnie, the president of Conference America and a party to this litigation. In its brief to us, Conference America argues that, had H.C. truthfully answered the questions on the juror questionnaire and in the oral voir dire about this prior employment, Conference America would have stricken H.C. from the panel. Likewise, in the postjudgment proceedings on the claim by Conference America of H.C.'s juror misconduct, counsel for Conference America swore that, had H.C. truthfully revealed his prior employment at Call Points, counsel
"would have recommended immediately that we strike him. The reason that I would do that is that there was a lot of acrimonious litigation going on at Call Points during Mr. Pirnie's remaining years there, and at Roper Industries, and that information was widely known among the employees. In addition, therewe knew that the defendants in this case, TCN, were going to try the character of Mr. Pirnie.
"....
"So, getting back to the issue, we didn't wantwe knew they were going to be trying Mr. Pirnie's character based on what they had done during discovery, during the depositions, talking about any incident involving former employees, abuse of employees, yelling at employees, screaming, whatever. And we didn't want to take a chance with any former employee that they potentially could sit on this jury. I would never ever choose someone who had been a former employee of Call Points to sit on this jury." (Emphasis added.)
Conference America knew that this prior employment of H.C.'s was important to TCN too, as it was the party which had propounded the voir dire questions about prior employment with Call Points. Yet, on the one hand, Conference America did not disclose its recognition of H.C. to the trial court or opposing counsel until ten days after the jury returned its verdict, but, on the other hand, immediately after the jury returned the verdict, Conference America began its preparations to seek a new trial on the ground of H.C.'s failure to reveal this prior employment.
The only investigation of H.C. by Conference America was prompted solely by his failure to disclose his prior employment by Call Points. To obtain all of the information about H.C.'s prior civil and criminal litigation, Conference America simply conducted a computer search in the "SJIS" system, not "a lengthy process" according to Conference America. This Court judicially knows that the SJIS is the computer-accessible State Judicial Information System operated by the Administrative Office of Courts of the Alabama Unified Judicial System. Conference America does not claim that it could not have conducted this computer search after it recognized H.C. but before the jury returned the verdict. Conference America claims only that it was using its paralegals and other legal manpower on other tasks.
Moreover, the information revealed by the search is the sort commonly held to be insufficient to require a new trial pursuant to a claim of a juror's nondisclosure in voir dire. See, e.g., United States v. Bishop, 264 F.3d 535 (5th Cir.2001); Coughlin v. Tailhook Ass'n, 112 F.3d 1052 (9th Cir.1997); United States v. Langford, 990 F.2d 65 (2d Cir.1993); United States v. Boney, *782 97 F.Supp.2d 1 (D.D.C.2000); Haisten v. Kubota Corp., 648 So.2d 561 (Ala.1994); Williston v. Ard, 611 So.2d 274 (Ala.1992); Volkswagen of America, Inc. v. Marinelli, 628 So.2d 378 (Ala.1993); Land & Assocs., Inc. v. Simmons, 562 So.2d 140 (Ala.1989); Ensor v. Wilson, 519 So.2d 1244 (Ala.1987); Curry v. Lee, 460 So.2d 1280 (Ala.1984); Burroughs Corp. v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala.1982); Estes Health Care Ctrs., Inc. v. Bannerman, 411 So.2d 109 (Ala.1982). For instance, H.C.'s "contract disputes," as denominated by Conference America, were really collection suits against him on undisputed debts, and the criminal conviction was a ten-year-old bad check case.
In Eaton v. Horton, 565 So.2d 183 (Ala.1990), the defendant Eaton appealed the denial of his motion for a JNOV or, in the alternative, for new trial. During voir dire of the prospective jurors, one of Eaton's attorneys asked whether anyone had been a plaintiff in a case or had been an employee of a plaintiff. John Wallace Goodwin, ultimately the foreman of the jury, did not respond to the question.
During the trial, Goodwin told the trial judge that he was a party to a pending case, and the judge told the attorneys representing Eaton and Horton respectively that one of the jurors was a party to a case. Later during the trial, Goodwin told the judge that his case had settled, and the judge told the attorneys that the juror's case had settled. After the jury returned a verdict in favor of Horton, Eaton moved for a JNOV or a new trial on the ground, among others, that Goodwin had failed to identify himself as a plaintiff in a pending case in response to Eaton's voir dire question. The trial court denied Eaton's postjudgment motion.
Eaton appealed the denial of his postjudgment motion. This Court stated:
"In Williams v. Dan River Mills, Inc., 286 Ala. 703, 246 So.2d 431 (1971), an attorney failed to timely challenge a juror for cause. We affirmed the trial court's denial of the motion for new trial, noting that during the trial the attorney had become aware of facts sufficient to impose on him a duty to further investigate the situation if he was truly disturbed by the juror's presence on the jury.

"This is the situation in the present case. The record now before us indicates that during the trial, counsel for the parties were informed, first, that one of the jurors was involved in a case set for trial the next week, and, second, that that case had been settled. Once Eaton was informed of these facts, he had a duty to further investigate the situation and voice his objection. Upon receiving this information, Eaton made no objections to the juror's continued service. Furthermore, Eaton made no inquiries into the nature of the lawsuit or into Juror Goodwin's suitability as a juror because of his involvement in that lawsuit. If Eaton intended to raise an objection to Goodwin's silence on voir dire, he should have done so promptly. Instead, we hold that, having concluded the case with notice of the facts and having taken the chance of a favorable verdict, Eaton has waived any objection to Goodwin's failure to respond; thus, the trial court did not err in denying the JNOV/new trial motion."
565 So.2d at 185 (emphasis added). Accord Jones v. Coley, 219 Ala. 23, 24, 121 So. 24, 25 (1929) ("Having knowledge during trial of the matter which constitutes this ground of the motion for a new trial and remaining silent until after the verdict, defendant will be conclusively held to have waived the same").
*783 Accordingly, Conference America waived its claim of juror misconduct by choosing not to raise it before the trial court before the jury returned its verdict. Therefore, this Court cannot rightly hold that the trial court exceeded its discretion in denying the motion for a new trial. Thus, I respectfully submit that the judgment should be affirmed.
NOTES
[1] Conference America and Old TCN entered into agreements in 1995 and 1996. Those agreements are not at issue in this appeal.
[2] Altshuler is also one of the owners of New TCN.
[3] On appeal, Conference America challenges the judgment only with respect to the breach of the 1997 agreement.
[4] Lipscomb is an employee of New TCN and a former employee of Conference America.
[5] Ala.Code 1975, § 8-5-20, provides: "All bonds, writings, and contracts for the payment of money, or other thing, or the performance of any act or duty, are assignable by endorsement so as to authorize an action thereon by each successive endorsee." (Emphasis added.) The parties dispute the proper interpretation of § 8-5-20. New TCN contends that under this provision, based on its broad language, all contracts are assignable (unless the contract itself limits the assignability). Conference America argues that the focus of this provision is the final clause"so as to authorize an action thereon by each successive endorsee"and that the provision merely changed the common-law rule to allow an assignee to bring an action on the contract in the assignee's name rather than "in the name of the person having the legal title" to the contract. Phillips v. Sellers, 42 Ala. 658, 661 (1868). We need not resolve this dispute to reach our conclusion regarding the assignability of the 1997 agreement. However, we note that, at the very least, the broad language of § 8-5-20 appears to reflect a general policy favoring the assignability of contracts.
[6] The equitable claims in Conference America's third amended complaint are count one (alleging breach of nondisclosure and use agreement), count three (alleging intentional interference with contractual relations), and count four (alleging intentional interference with customers).
[7] The basis of Conference America's assertion of "implicit fiduciary duties" is the following language from Allied Supply Co. v. Brown, 585 So.2d 33, 37 (Ala.1991):

"It is an agent's duty to act, in all circumstances, with due regard for the interests of his principal, and to act with the utmost good faith and loyalty. Implicit in this duty is an obligation not to subvert the principal's business by luring away customers or employees of the principal, or to otherwise act in any manner adverse to the principal's interest."
(Citations omitted.)