On October 30, 1986, Pamela Saint received severe, permanent brain injuries when the 1984 Chevrolet Celebrity automobile she was driving hit a low shoulder on a two-lane road in Marion County, veered out of control, and hit a tree. Ms. Saint and her husband sued General Motors Corporation ("GM") under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), claiming that her car was not crashworthy because, they alleged, its seat belt assembly failed to protect Ms. Saint adequately from enhanced injuries she sustained in the accident. Specifically, they claimed that the seat belt's "comfort feature," which GM had designed and had begun putting in its cars in 1976, allowed extensive slack to develop and, as a result, caused the seat belt not to properly restrain the occupant. The jury returned a verdict in favor of Pamela Saint and awarded her $13,000,000; it returned a verdict for GM on her husband's loss of consortium claim.
Although GM raises 17 issues on appeal, we will address only the issue whether the trial court erred in refusing to charge the jury on contributory negligence. We reverse because of error in that regard. Ms. Saint contends that, based onDennis v. American Honda Motor Co., 585 So.2d 1336 (Ala. 1991), "[t]raditional contributory negligence is not a defense in an AEMLD action" and that "only the 'product misuse' form of contributory negligence is an allowable defense." This is not, however, a Dennis v. American Honda Motor Co. situation, nor was that this Court's holding in Dennis.
In Dennis, Honda alleged that Dennis had been contributorily negligent in causing the accident, not that he had been negligent in wearing the helmet he claimed was defective. The trial judge charged the jury on contributory negligence with regard to accident causation. This Court reversed the judgment based on the verdict in favor of Honda and held that a plaintiff's negligence in causing an accident is not a bar to an AEMLD action. 585 So.2d at 1342. This Court did not hold that a plaintiff's contributory *Page 566 
negligence relating to the defective product is no longer a defense in product liability cases. See Williams v. DeltaInternational Machinery Corp., 619 So.2d 1330 (Ala. 1993), for an explanation of the holding in Dennis.
The situation here is just the reverse of that inDennis. GM maintains that Ms. Saint was not wearing her seat belt or, in the alternative, that she put the slack in her seat belt. Whether Ms. Saint was, in fact, wearing her seat belt was hotly contested at trial, with testimony from each side supporting its position. One of Ms. Saint's witnesses, Voyd Lolley, an ambulance attendant, stated in his deposition that the shoulder belt was over Ms. Saint's left shoulder and that he cut it to get her out of the car. At trial, however, Lolley stated that the shoulder belt was around Ms. Saint's waist when he arrived at the scene.
Another of Ms. Saint's witnesses, John Harcourt, a metallurgist, said that the shoulder belt could not have been across Saint's left shoulder; he said he held that opinion because of the position she was in immediately after the wreck. In addition, Harcourt testified that Ms. Saint had put in the slack that was in her belt:
 "Q. And it is your belief or opinion that there was some slack in her lap belt?
"A. Yes.
 "Q. But that would have been put in there by her; would it not?
"A. Yes.
 "Q. In other words, when she started out you are saying she would have put slack in the belt because somehow she would have had trouble latching it without putting slack in it?
"A. You can't latch it without slack.
"Q. Now —
"A. You can't. I can't. No one can.
 "Q. But I want to make it clear so the jury doesn't get the impression that somehow that slack starts working its way into the belt. That can't happen; can it?
"A. No. It is —
 "Q. In fact, that is why the cinching latchplate is there, is to keep slack from getting in the lap belt after you, after you buckle it?
"A. That may be a possibility, yes.
 "Q. All right. In other words, if you had a sliding latchplate, then arguably the belt could slide between the shoulder and —
 "A. Right. Because of the tension relief device it can allow so much excessive slack in the shoulder that if you had a slipping it would come down to the lap portion also.
 "Q. But you are not saying — In other words, you are not saying that happened? You are saying whatever slack there is in the lap belt had to be put in there when she put it on?
"A. Yes, when she don[ned] the belt.
". . . .
 "Q. Okay. When she put it on, then you say she had — Now you say she had six inches of slack?
 "A. That is what was illustrated on the model. I say four or more inches.
 "Q. Well, I thought you told this jury this morning or yesterday that you thought, you were of the opinion she had six inches of slack. I wrote that down.
"A. Yes, sir.
"Q. And which is it?
 "A. They are both consistent, four or more and six. I said six because of at the time of the deposition I said four or more. After actually demonstrating with the model I think it is closer to six."
The testimony at trial established that slack in the lap belt is removed by pulling up on the shoulder belt. Once the belt is buckled and the slack is gone, no more slack can develop. The owner's manual for the Chevrolet Celebrity explains how to eliminate the slack and explicitly states that the belt should fit snugly for safety purposes:
"SEAT BELT SYSTEMS
 "CAUTION: To help reduce the risk of personal injury in collisions or sudden maneuvers use the seat belts following *Page 567 
the instructions in this section on their proper use, maintenance, and application with child restraint systems. This includes pregnant women; pregnant women should select a seat with a lap-shoulder belt whenever possible.
". . . .
 "To reduce the risk of sliding under the belt during a collision, position the belt across your lap as LOW ON YOUR HIPS as possible and adjust it to a SNUG FIT by pulling the 'shoulder' portion upward through the latch plate.
". . . .
 "Keep any shoulder belt slack to a minimum. Too much belt slack could reduce the amount of protection in an accident because the belt is too loose to restrain you properly."
(Emphasis original.)
GM requested the following instructions on contributory negligence:
"DEFENDANT'S REQUEST TO CHARGE NO. 22
 "I charge you, Ladies and Gentlemen of the Jury, that the defendant has also interposed a defense of contributory negligence in the use [of the seat belt] installed on the 1984 Chevrolet Celebrity. By that, defendant claims that at the time and place specified the plaintiff Pamela Saint herself was negligent in the operation or use of the seat belt system installed on the 1984 Chevrolet Celebrity, and that the plaintiff Pamela Saint's own negligent use or misuse proximately caused or proximately contributed to cause plaintiff Pamela Saint's injuries.
 "If you are reasonably satisfied from the evidence that the plaintiffs have proven all the elements of their claim as I have previously outlined them to you, and that plaintiff Pamela Saint was not guilty of contributory negligence in the use of the seat belt system on the 1984 Chevrolet Celebrity as claimed by the defendant, then your verdict will be for the plaintiffs.
 "If, however, you are reasonably satisfied from the evidence that plaintiff Pamela Saint was guilty of contributory negligence in the use of the seat belt system in the 1984 Chevrolet Celebrity as claimed by the defendant, then your verdict must be for the defendant."
"DEFENDANT'S REQUEST TO CHARGE NO. 23
 "I charge you, Ladies and Gentlemen of the Jury, that if you are reasonably satisfied from the evidence that plaintiff Pamela Saint failed to use reasonable care in the use of the seat belt restraint system on the subject 1984 Chevrolet Celebrity or misused the seat belt restraint system at the time and place of the accident at issue, and if you are further reasonably satisfied that her failure to use reasonable care contributed to cause the injuries in question to any degree, then your verdict must be for the defendant."
"DEFENDANT'S REQUEST TO CHARGE NO. 24
 "I charge you, Ladies and Gentlemen of the Jury, that contributory negligence is negligence on the part of the plaintiff Pamela Saint which proximately contributed to the alleged injury. The defendant has raised contributory negligence as an affirmative defense; therefore, the burden is upon the defendant to reasonably satisfy you from the evidence as to the truth of the material allegations of this defense. If you are reasonably satisfied from the evidence that plaintiff Pamela Saint was contributorily negligent in using the seat belt restraint system in the subject 1984 Chevrolet Celebrity, plaintiffs cannot recover, and your verdict should be for the defendant."
Ms. Saint argues that the charge the trial judge gave on product misuse was sufficient without the court's giving these requested charges — that, essentially, a charge on product misuse is a charge on contributory negligence. This is not a correct statement of the law with regard to defenses under the AEMLD, because the theories behind product misuse and contributory negligence *Page 568 
are distinct from one another, rather than synonymous.
In Hammond v. McDonough Power Equipment, Inc., 436 So.2d 842
(Ala. 1983), this Court held that the trial judge correctly submitted to the jury the issues of the plaintiff's alleged contributory negligence, assumption of the risk, and misuse of the product. A plaintiff misuses a product when he or she uses it in a manner not intended or foreseen by the manufacturer.Kelly v. M. Trigg Enterprises, Inc., 605 So.2d 1185 (Ala. 1992). A plaintiff is contributorily negligent in handling a defective product when he or she fails to use reasonable care with regard to that product. Williams v. Delta International MachineryCorp., supra; Harley-Davidson, Inc. v. Toomey, 521 So.2d 971
(Ala. 1988). See, also, Edward C. Martin, "Alabama's Extended Manufacturer's Liability Doctrine (AEMLD)," 13 Am. J. Trial Advoc. 983 (1990) (cited with approval in Kelly v. M. TriggEnterprises, Inc., supra) and D. Alan Thomas and Nancy S. Akel, "Products Liability and Contributory Negligence in the Wake ofWilliams v. Delta International Machinery Corp.," 54 AlabamaLawyer 261 (1993), for discussions of the differences between the two defenses.
There was evidence from Ms. Saint's own expert that she allowed slack to remain in her seat belt. GM clearly foresaw the danger that would result from someone's doing so and warned against it in its owner's manual. From that evidence, a jury could find that, although Ms. Saint did not use her seat belt in an unintended or unforeseen manner, she nonetheless was negligent — that is, that she failed to use reasonable care — in wearing it. GM was entitled to a jury charge on contributory negligence, and the trial court erred in not giving such a charge.
The judgment based on the jury's verdict in favor of Ms. Saint is, therefore, reversed, and the cause is remanded.
REVERSED AND REMANDED.
MADDOX, ALMON, SHORES and HOUSTON, JJ., concur.
HORNSBY, C.J., and KENNEDY, INGRAM and COOK, JJ., dissent.