The plaintiffs, James Brian Haisten ("Brian") and his wife Pamela D. Haisten, appeal from a judgment based on a jury verdict in favor of the defendants, Kubota Corporation and Kubota Tractor Corporation (collectively referred to as "Kubota").
Brian Haisten was injured when the tractor he was operating overturned and the rotary blade attached to the tractor cut his legs. The tractor had been manufactured by Kubota. Brian's left leg was amputated below the knee, and he lost the use of certain muscles in his right leg. The Haistens sued Kubota, alleging that the tractor was "defective" as that term is used in our cases establishing the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), because it did not contain a rollover protection system ("ROPS"). They also alleged negligence and wantonness on the part of Kubota. The Haistens also sued Cahaba Tractor Company ("Cahaba"), which had sold them the tractor.
The jury heard evidence that while Brian was operating the tractor on a sloping bank near a road the tractor stopped and one of the rear tires began to spin; that the spinning tire caused the tractor to slide down the slope; that Brian put the tractor into reverse gear and that his doing so caused the tractor to go further down the slope; that the front *Page 563 
left tire then lifted off the ground; that as the tractor overturned, Brian jumped off, toward the road and upwards on the slope; and that at that point the rotary blade, still operating, hit Brian's legs and caused his injuries.
Both the Haistens and Kubota presented expert evidence concerning the tractor. The Haistens' expert testified that the tractor was defective without the ROPS. Kubota's expert testified that he would not operate a tractor on a slope and that the absence of a ROPS on the tractor did not make the tractor unreasonably dangerous or defective.
The jury found in favor of Kubota and Cahaba on all the claims. The trial court entered a judgment based on the verdict. The Haistens appeal, asserting four grounds for reversal. Cahaba is not a party to this appeal.
First, the Haistens argue that the trial court erred in not striking a juror for cause after she stated that she knew the children of one of the attorneys for Cahaba. The following exchange occurred between the Haistens' attorney and a juror:
 "Attorney: Now Cahaba Tractor Company sold the tractor here in Alabama. They are down in Pelham, Alabama. The whole name is Marineland, Inc., doing business as Cahaba Tractor Company, but I think you're going to find all of them are going to call them Cahaba Tractor Company. They are represented by Ralph Gaines, Rad Gaines, and Mark Rasco with the Gaines, Gaines, and Gaines firm here in Talladega. Do any of y'all know any of the Gaineses? Yes, ma'am?
". . . .
"Attorney: Thank you. Anyone else? Yes, ma'am?
 "Juror Cross: I'm Mary Cross. Rad and I have children the same ages, and they are in a lot of social activities together.
 "Attorney: Okay, so Rad's children play with your children?
"Juror Cross: At school.
 "Attorney: At school? Rad's children never had opportunity to aggravate you —
"Juror Cross: No.
 "Attorney: Now how about the fact that, you know, through the children, you are going to see Rad on social occasions. You think maybe that would make — as far as — if one of your friends was on one side of the case would it be a little bit hard for you to sit there and say, 'Well, I'm going to put that aside, knowing that I'm going to see Rad'? Would you have a little bit of difficulty?
"Juror Cross: Probably."
(R.T. 122-23.)
The Haistens moved that the court strike Juror Cross for cause. The court then asked Juror Cross the following questions:
 "Court: Let me get this cleared up right now. Mrs. Cross? I know right where you are sitting because I saw your hand go up a lot. Let me ask you this question. I believe you have indicated that your children and Rad's children are in the same group sometimes, go to school together or whatever. If you were selected to serve as a juror in this case, could you put aside that social relationship and render your verdict simply on the evidence that comes to you from the witness stand and according to the law as the Court gives it to you at the appropriate time?
"Juror Cross: I think so.
"Court: It's one of those yes or no questions now.
"Juror Cross: Not an 'I think so'?
 "Court: Not 'I think so.' I've got to have a yes or no.
"Juror Cross: Yes."
(R.T. 195-96.)
The trial court did not strike Juror Cross for cause. Subsequently, the Haistens used a peremptory challenge to strike her from the jury.
The trial court is given broad discretion in regard to sustaining or denying a challenge for cause. Its decision is therefore entitled to great weight, and it will not be disturbed unless it is clearly erroneous. Kumar v. Lewis,561 So.2d 1082 (Ala. 1990).
With respect to the determination of whether a prospective juror should be excluded for cause based on an inability to *Page 564 
render a fair and impartial verdict, the trial judge is in the best position to observe the juror's demeanor and tone in response to counsel's questions and to determine what the response means. Morrison v. State, 601 So.2d 165 (Ala.Cr.App. 1992).
The trial judge questioned the potential juror. The trial judge observed her demeanor and weighed her answers accordingly. She was asked whether she could render a fair and impartial verdict, and she answered affirmatively. The record shows no abuse of discretion.
Second, the Haistens argue that the trial court erred in denying their motion for a new trial. The motion was based on the Haistens' contention that four jurors had failed to respond to questions asked during voir dire regarding the jurors' involvement in other lawsuits.
At the outset, we note:
 "Parties involved in litigation are entitled to true and honest answers from prospective jurors in order to help them exercise their discretion in the use of peremptory strikes and, when jurors fail to answer questions correctly, the parties are denied the exercise of that right. Martin v. Mansell, 357 So.2d 964 (Ala. 1978). The proper inquiry on a motion for a new trial based on improper or nonexistent responses to voir dire
questions is whether the response, or the lack of response, resulted in probable prejudice to the movant. Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970). Not every failure of a prospective juror to respond correctly to a voir dire question will entitle the losing party to a new trial. Wallace v. Campbell, 475 So.2d 521 (Ala. 1985)."
Union Mortgage Co. v. Barlow, 595 So.2d 1335, 1342 (Ala. 1992).
It is within the trial judge's discretion to determine whether the complaining party was prejudiced by a prospective juror's failure to answer voir dire questions and the judge's ruling will not be reversed except for an abuse of discretion. This Court has established a list of factors for a court to consider in determining whether there was probable prejudice; those factors include, but are not limited to, the temporal remoteness of the matter inquired about, the ambiguity of the question, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter asked about.Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970).
The Haistens' attorney asked: "Have you or any of your immediate family ever been a defendant in a lawsuit involving money damages where you or a member of your family has been sued? Have any of you ever served on a jury in a civil case: That's a case — well, let's just say a case involving personal injuries?" Juror S. and Juror C. failed to disclose that they or a member of their family had been involved in a lawsuit.
Juror S. testified at the motion for a new trial that he did not intentionally withhold any information. He stated that he had not considered himself a party to an action brought 10 years earlier involving a co-employee, because, he said, he was never served with a copy of the complaint, never appeared in court, never gave a deposition or answered interrogatories, and knew of the action only because his employer told him about it. With respect to an action involving his son, Juror S. testified that at the time of the voir dire examination he did not know that his son had been named in a lawsuit and that he learned of it only when the Haistens' attorney told him about it.
Juror C. testified that he did not intentionally withhold information concerning a small claims action that had been brought against him four years earlier. He stated that he did not have to go to the courthouse and defend the action.
Juror R. stated that she had failed to state that her husband had filed a personal injury action 20 years earlier because she had not known that he had filed it or that he had received any damages from it; she said that was because they were not married when he filed it.
Juror B. stated that she did not consider the small claims action she had filed 14 years earlier to be a lawsuit, because, she said, she just filled out a piece of paper and did not *Page 565 
recall filing the small claims action until it was mentioned after the trial.
Looking at the factors listed in Freeman, we cannot say the trial court abused its discretion in denying a new trial based on these four jurors' failure to respond. Three of the four lawsuits were filed at least 10 years before the case at bar. All four jurors testified that they did not intentionally withhold any information on voir dire. The jurors involved in the small claims actions considered them to be nothing more than simple collection matters — not "lawsuits" where attorneys are involved.
Third, the Haistens argue that the trial court erred in charging the jury with respect to contributory negligence as a defense to the AEMLD claim. Kubota claimed that Brian was contributorily negligent in using the tractor on a slope. As this Court recently held in General Motors Corp. v. Saint,646 So.2d 564 (Ala. 1994), contributory negligence can be a defense to an AEMLD action under certain situations: "A plaintiff is contributorily negligent in handling a defective product when he or she fails to use reasonable care with regard to that product." 646 So.2d at 568. Contributory negligence is a separate defense from product misuse; a plaintiff misuses a product when he or she uses it in a manner not intended or foreseen by the manufacturer. The trial court correctly gave the contributory negligence charge in this case; that defense is available in this AEMLD action alleging a defect in the tractor.
Last, the Haistens argue that the judgment should be reversed on a "cumulative error" theory. We must reject this argument, because we have concluded that the trial court did not err in regard to any of the three specific errors argued.
Based on the foregoing, we affirm.
AFFIRMED.
MADDOX, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.