Gold Kist, Inc., appeals from an order of the trial court granting a new trial to plaintiffs Mavis Brown and Coy Brown and defendant Douglas Lang. We affirm.
The trial court's order, in pertinent part, reads:
"This case has now been submitted to this Court for decision on the Motion for New Trial filed by the Plaintiffs, Mavis Brown and Coy Brown, and also on the Motion for New Trial filed by the Defendant Douglas MacArthur Lang.
"On Saturday morning, April 17, 1982, Mavis Brown was operating a pick-up truck along Alabama Highway 75 on her way home from a visit to a beauty salon.
"As her vehicle approached a bridge located over a creek, a Gold Kist tractor-trailer rig, sometimes called an eighteen wheeler, operated by Randall Honea, was approaching the same bridge from the opposite direction.
"According to the testimony of an expert witness who had actually measured the bridge with a tape measure, the bridge is one hundred feet in length. It has concrete railings on both sides and is of uniform width. Its width determined by the distance between the concrete railings is nineteen feet, eight inches.
"Mavis Brown testified that she first saw the Gold Kist tractor-trailer rig as it approached the bridge. It was traveling at a speed of forty-five to fifty miles per hour and was straddling the center line of the highway coming around a curve and approaching the other end of the bridge. She began applying the brakes of her vehicle and also began pulling off to the right side of the highway in order to avoid a collision with the tractor-trailer rig. She was then about two truck lengths from her end of the bridge. She had pulled over sufficiently so that two of the wheels of her vehicle were off the pavement. She estimated that her vehicle was about one-half off the pavement. She saw the Gold Kist truck coming across the bridge still straddling the center line. Its speed had not changed.
"It was her opinion that there was not room on the bridge for her pickup truck to pass the the Gold Kist tractor-trailer rig. The Gold Kist truck had not cleared her vehicle when her vehicle was struck from the rear and knocked forward into the concrete bridge railing, causing her very serious injuries and damages for which she and her husband now make claim.
"The Defendant Lang was operating a pickup truck following Mavis Brown. Lang testified that he was traveling behind Mavis Brown at a speed of forty to forty-five miles per hour as he approached the bridge. He saw the Gold Kist truck entering the bridge from the opposite direction. It was then three to four feet over the center line. Lang saw the brake lights go on on Mavis Brown's vehicle. He applied his brakes. The rear wheels of the Gold Kist tractor-trailer rig struck the side of Lang's pickup truck, causing his pickup truck to go forward and strike the rear of Mavis Brown's vehicle, which then collided with the concrete railing of the bridge.
"On the other hand, Randall Honea testified that he was operating the Gold Kist tractor-trailer rig; that he travelled around the curve on Highway 75 approaching the bridge at a speed of forty to forty-five *Page 542 
miles per hour and that he then slowed to twenty-five to thirty miles per hour going across the bridge. He testified that Mavis Brown's vehicle was stopped or almost stopped as he came across the bridge and that the pickup truck being operated by Lang struck the rear of Mavis Brown's truck, then bounced over the center line in front of his vehicle on his side of the road and was there struck by the rear wheels of his tractor. The collision with the pickup truck caused a spring hanger to break in the tractor so that Honea then lost control over steering. His vehicle bounced up, made a left turn, and sped down the side of an embankment and into an open field next to the embankment.
"Two other witnesses, David Stackhouse and Ida Katherine Stackhouse, were travelling in an automobile behind Lang's pickup truck. David Stackhouse testified that Mavis Brown's vehicle began to slow down and then slid into the bridge and that Lang's truck then hit the rear of Mavis Brown's vehicle, bounced to the left from the impact and collided with the Gold Kist tractor-trailer rig on the side of the highway on which the tractor-trailer rig was travelling. According to David Stackhouse's testimony, the tractor-trailer rig remained on its side of the highway the entire time.
"This case was submitted to the jury on the issues whether Gold Kist and its employee, Honea, were guilty of negligence or wanton conduct which proximately caused or contributed to cause the accident; or whether Lang was guilty of negligence which proximately caused or contributed to cause the accident; and also whether Mavis Brown was guilty of contributory negligence which proximately caused or contributed to cause the accident.
"The jury returned a verdict in favor of Gold Kist and Honea. The jury found in favor of Mavis Brown against Lang and awarded damages to Mavis Brown in the amount of $150,000.00.
"In support of their Motions for New Trial, Mavis and Coy Brown and Lang argue that they did not receive a fair trial because one of the veniremen who was eventually selected as a juror did not truthfully respond to questions on voir dire examination. The juror, Scott Freeman, when asked to identify himself and state his place of employment, stated that he worked at Gayle Supply Company.
"Later, when expressly asked by counsel for Mavis and Coy Brown what he did at Gayle Supply, Freeman responded that he worked in the `storeroom.'
"In support of the Browns' Motion for New Trial, the Browns have submitted the affidavit of Bill Gayle, President of Gayle Supply Company, who states as follows:
 "`Scott D. Freeman has been employed by the Gayle Supply Company since September of 1983. Throughout that period of time he has been a truck driver at the Gayle Supply Company. He does not work in the warehouse and has never been a warehouse worker for the Gayle supply Company.'
"Two Affidavits have been filed by counsel for Gold Kist and Honea in opposition to the Browns' Motion for New Trial.
"In one Affidavit executed by Scott Freeman, he states under oath in part as follows:
 "`3. When I responded to counsel's for the Plaintiffs question concerning my job at Gayle supply, I was under the assumption that what was meant by truck driver, was the driver of an 18 wheel transport truck. I have driven a pickup to a 2-ton truck on deliveries and work in the warehouse at Gayle Supply so I assumed no, when asked if I was a truck driver.
 "`4. I did not intend to deceive anyone nor did I have improper motive concerning my response.'
In the other Affidavit submitted by counsel for Gold Kist and Honea, Bill Gayle states under oath as follows:
 "`I have read the affidavit which was already presented to me for my signature. It is not technically correct. Mr. Freeman is classified as a driver with our company. He does not drive any 18 wheel truck. The biggest truck he *Page 543 
would drive would be a two ton. His job is primarily to make deliveries in the Jefferson County area, although he could go as far as 70 miles away. He does work part of the time in our warehouse, so I cannot state that he never does any warehouse work.'
"The list of jurors for the week of January 28, 1985, listed Scott Freeman as follows.
 "`79. Freeman-Scott D. 1904 Dix Circle B'ham. 35215 Truck Driver Gayle Supply'
"The jury qualification questionnaire returned to the Jefferson County Jury Commission by Freeman contained the following:
"`8. What is your occupation and business address?
"`Truck Driver, Gayle Supply Company.'
"Scott Freeman was also called as a witness in connection with the Motion for New Trial. He testified at the hearing that he had been working at Gayle Supply for approximately one and one-half years. Freeman stated that he worked in the warehouse and made deliveries. Freeman further testified that when asked what he did, he said that he worked in a warehouse. The talk had been about eighteen wheeler tractor-trailer trucks and that he has never driven an eighteen wheeler tractor-trailer rig. He doesn't ever want to drive one. Freeman further testified that the jury information questionnaire had been filled out by his mother and he had then signed it. He did state that he was classified as a truck driver at Gayle Supply Company.
". . . .
"The . . . question is whether the Browns and Lang are entitled to a new trial because of Freeman's failure to disclose on voir dire that his duties as an employee at Gayle Supply primarily involved driving a truck.
"Generally, parties have a right to have their questions on voir dire answered truthfully to enable them to exercise their discretion wisely in the use of their peremptory strikes.Sanders v. Scarvey, 284 Ala. 215, 224 So.2d 247 (1969). This principle has been qualified in later decisions as requiring `regard to the factual background of a particular situation.'Miller v. Samples, 291 Ala. 533, 535, 283 So.2d 424 (1973).
"In Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970), the Supreme Court stated as the appropriate rule the following:
 "`We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant. This appears to be the general rule throughout the country. (See Annotations, 38 A.L.R.2d 624, and 63 A.L.R.2d 1061). . . .'
"Discussing the basis upon which a court's determination of prejudice is made, the Supreme court stated:
 "`Although the factors upon which the trial court's determination of prejudice is made must necessarily vary from case to case, some of the factors which other courts have considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.
 "`We are mindful of the heavy responsibility placed on the trial court to maintain the statutory right which parties have to a full and truthful disclosure by jurors on voir dire. However, we must also be aware of inadvertent concealment and failure to recollect on the part of prospective jurors.
 "`To re-emphasize, we say that we will review the trial court's ruling on motion for new trial predicated on jurors' improper answers to (or failure to answer) questions propounded on voir dire only for abuse of discretion in its determination as to probable prejudice.' *Page 544 
"In Freeman, several jurors failed to respond to inquiries as to whether they or members of their immediate family had been parties to lawsuits. In fact, although those jurors or their family members had been parties, one did not consider a collection suit for rent which had been settled to be a `lawsuit.' Another juror was found to be `incapable of understanding the questions put to him on voir dire and incapable of persuading any other juror during the jury's deliberation.' A third juror did not know that his father was involved in a suit at the time of trial. [286 Ala.] at 165 [238 So.2d 330].
"In affirming the action of the trial court in denying plaintiff's motion for new trial, the Supreme Court evidently found that the trial court's conclusion that the jurors' failure to answer was inadvertent and due to a misunderstanding or because the juror himself did not know the correct answer [was supported by the record].
"Also see, Curry v. Lee, 460 So.2d 1280 (Ala. 1984); EstesHealth Care Centers, Inc. v. Bannerman, 411 So.2d 109 (Ala. 1982); Miller v. Samples, 291 Ala. 553 [533], 283 So.2d 424
(1973).
"In Curry, supra, the trial court determined that a member of the venire did not realize that she was a `defendant in a lawsuit,' and so did not respond affirmatively to an inquiry to that effect. The Supreme Court of Alabama affirmed the decision of the trial court denying a motion for new trial because of its finding that the juror's failure to respond did not result in prejudice to the movant.
"Although no case is on all fours with the present case now before this Court, possibly the most relevant is the decision of the Supreme Court in Ex Parte Ledbetter, 404 So.2d 731 (Ala. 1981). In that case, involving a prosecution against the defendant and his conviction of the crime of robbery, a juror who was a former deputy sheriff had failed to respond to a question asking whether members of the jury panel had been victims of a crime. In fact, the juror's home had been struck by gunfire and he had reported the incident to the local police, who had investigated and filed a report.
"Reversing the defendant's conviction and ordering a new trial, the Supreme Court placed particular emphasis on the fact that the particular juror had been a law enforcement officer himself. The Supreme Court stated in its opinion:
 "`"It would, it seems to us, be the rankest casuistry to contend that there was no probable injury to defendant by the concealment of the juror, aforesaid. It is but natural that such a juror, as a general proposition, who had been engaged in the same business, had arrested persons guilty of similar misconduct, and had probably been subjected to like attempted assaults, as the victim here, would stand less indifferent than a layman, free from the tug of such former professional influences."' [Quoting from Leach v. State, 31 Ala. App. 390, 18 So.2d 285
(1944).]
"In the present case Scott Freeman's answer was partially correct since he did perform some work in a storeroom or warehouse. However, his answer was incomplete and therefore materially misleading. As the Court of Civil Appeals of Alabama has stated in Jackson Company v. Faulkner, 55 Ala. App. 354,315 So.2d 591 (1975):
 "`"To tell half a truth has been declared to be equivalent to the concealment of the other half. A partial and fragmentary disclosure, accompanied by the willful concealment of material and qualifying facts is not a true statement, and is as much a fraud as an actual misrepresentation, which, in effect, it is. Therefore, if one willfully conceals and suppresses such facts, and thereby leads the other party to believe that the matters to which the statements made relate are different from what they actually are, he is guilty of a fraudulent concealment."'
[Citations omitted.]
"It is clear from the Affidavit of Freeman's employer and from his own statement that he was employed primarily to operate as a truck driver for Gayle Supply. Freeman's answer was misleading in that it *Page 545 
failed to fully or completely disclose his employment at Gayle Supply.
"The issue is whether the Browns suffered probable prejudice. The Supreme Court in Freeman discussed some of the factors considered pertinent in deciding this question. Those factors are now considered in connection with this case as follows:
"1. Temporal remoteness of the matter inquired about; and
"2. Ambiguity of the question propounded.
"The question to Freeman concerned his current duties and work for his employer, Gayle Supply. The question was direct and unambiguous.
"3. The prospective juror's inadvertence or willfulness in falsifying or failing to answer; and
"4. The failure of the juror to recollect.
"It is not possible to know directly the state of Freeman's mind and memory at the time he answered the question about his occupation. However, Freeman had himself signed a questionnaire listing his occupation as a truck driver. It was also established that driving a truck was at the very least a substantial part of his current duties at Gayle Supply. It can be inferred from such circumstantial evidence that Freeman's failure to fully answer the question was not inadvertent or the result of Freeman's failure to recollect.
"5. Materiality of the matter inquired about.
"A material fact can be defined as one which an attorney acting as a reasonably competent attorney, would consider important in making the decision whether or not to excuse a prospective juror.
"Questions propounded during the interrogation of the panel indicated that the attorneys in this case considered the question material.
"The following question was asked juror Roger O. Burson concerning his employment:
"`Mr. Burson: I live at 2717 Ensley Avenue here in Birmingham. I work for Fagan Express and I am single.
"`Mr. McDaniel: What do you do at Fagan Express?
"`Mr. Burson: I am a courier.
"`Mr. McDaniel: That doesn't involve driving trucks?
"`Mr. Burson: Well, I drive cars.
"`Mr. McDaniel: You make pick-ups?
"`Mr. Burson: Yes.'
"Another member of the panel, James Barnett, was also a truck driver and was not struck by the Browns' attorneys but by the Defendants' attorneys. However, Barnett had stated in answer to other questions that while driving his personal vehicle, he had been struck and forced off the road by a flatbed truck which was straddling the center line. Barnett had also stated that some of his relatives had been involved in an accident of some type and he thought that it had involved a Gold Kist truck. Since Gold Kist was a Defendant in this case, these answers by Barnett are sufficient explanation why counsel for the Plaintiffs made the decision not to strike Barnett and counsel for the Defendants did do so.
"It was material that a substantial part of Scott Freeman's duties as an employee of Gayle Supply involved driving a truck. Counsel for the Browns believed, not unreasonably, that jurors who were truck drivers would identify with Honea, also a truck driver, and his employer, Gold Kist. This Court concludes that the Browns did suffer probable prejudice when their counsel did not receive a full and truthful answer to the question addressed to Scott Freeman.
"In accordance with this Opinion, the Motion for New Trial filed by the Plaintiffs, Mavis Brown and Coy Brown, and the Motion for new Trial filed by the Defendant Douglas MacArthur Lang are hereby granted." *Page 546 
The appellant contends that the trial court's order should be reversed for the following reasons:
(1) The trial court erred in its determination that Mr.Freeman's response was not the result of inadvertence when hehad stated by affidavit and on oral examination that he did notintend to mislead anyone. The trial court acknowledged that it did not know the state of Freeman's mind and memory at the time he responded to the question. However, Freeman had signed a questionnaire listing his occupation as a truckdriver and there was also evidence that driving a truck was, at the very least, a substantial part of his duties at Gayle Supply. This is sufficient evidence to support the trial court's determination.
(2) Because of the difference in the sizes of the trucksdriven by Freeman and Honea, the trial court erred in itsdetermination that the matter which was the subject of inquiryon voir dire was material. The appellants argue that Freeman did not drive a large tractor-trailer truck in the performance of his delivery duties at Gayle Supply. However, the evidence did show that he drove either a pick-up or a "two ton" truck. The focus of inquiry here should not necessarily be on the relative size of the trucks. As the trial court correctly noted, information sought on voir dire is material if the questioning attorney considers it important in making the decision to excuse a prospective juror. In this case, it was material that a substantial part of Freeman's duties as an employee of Gayle Supply involved delivery of goods by truck. It is not unreasonable to conclude that, notwithstanding the difference in the sizes of the trucks driven, Freeman might identify with Honea, whose duties with Gold Kist also involved the delivery of goods by truck. Again, the trial court did not err in this determination.
(3) Because the question propounded to Freeman on voir direwas subject to a variety of responses (e.g., a job title, ageneral description of job duties or a description of primaryduties), the trial court erred in its determination that thequestion was not ambiguous. Freeman was asked, "What do you do at Gayle Supply?" Freeman responded, "Work in the storeroom." The question is not ambiguous. Freeman simply did not fully answer it. We agree with the trial court that what we have in this case is not an ambiguous question but an incomplete (and thus misleading) response to an unambiguous question.
(4) The trial court erred in failing to properly considerthat the questioning attorney had access to the list of jurorsand the jury qualification questionnaire, both of which showedFreeman's occupation to be "truck driver." The fact that the questioning attorney had access to the jury list and qualification questionnaire is not in and of itself determinative. The questioning attorney stated by affidavit that the question which he propounded to Freeman was intended to elicit a response sufficient to confirm the occupational information shown on those two documents. The appellants argue that because of the questioning attorney's access to the information shown on the jury list and qualification questionnaire, any objection to Freeman's incomplete response was waived because the matter was not pursued. In support of this argument, the appellants cite Williams v. Dan River Mills,Inc., 286 Ala. 703, 246 So.2d 431 (1971), wherein the Court stated:
 "It is a well-recognized principle that notice of facts which ought to excite inquiry and which, if pursued, would lead to knowledge of other facts, operates as notice of those facts." (Citations omitted.)
In that case, the plaintiffs' attorney discovered during trial that there was a connection between a juror and a member of the opposing law firm. As a result of that connection the juror was subject to challenge for cause. This Court held that the attorney waived this issue by not pursuing the matter at all until after trial and, therefore, could not raise it in a motion for new *Page 547 
trial. As previously stated, the questioning attorney in the present case stated that he was, by asking the question, attempting to confirm the information shown on the jury list and the qualification questionnaire. The question was not ambiguous and, on its face, neither was the answer.
Arguably, it might have been prudent for the questioning attorney to ask a follow-up question in this case. However, for all that appears in the record the questioning attorney was satisfied with Freeman's response.
(5) The trial court erred in granting a new trial because theverdict was amply supported by the evidence. The appellants rely on Burroughs Corp. v. Hall Affiliates, Inc.,423 So.2d 1348 (Ala. 1982), and Stokely-Van Camp, Inc. v. Ferguson,271 Ala. 120, 122 So.2d 356 (1959). In Burroughs, the trial court found that the evidence introduced at trial amply supported the verdict and that "it would have been difficult for the [d]efendant to [have found] any unbiased juror anywhere who would have ruled differently from the present jury." This language appears in the opinion as part of the trial court's order set out therein and was but one of several factors considered by that court in ruling on the motion for new trial. This Court, relying on Freeman v. Hall, 286 Ala. 161,238 So.2d 330 (1970), and related cases, affirmed the trial court's decision. The appellants cite Stokely-Van Camp as standing for the proposition that "verdicts are presumed to be correct and no ground for a new trial is more carefully scrutinized or more rigidly limited than that the verdict is against the evidence." That case is inapposite because, here the trial court did not grant a new trial on the ground that the verdict was against the evidence. It granted a new trial only after finding that "probable prejudice" had resulted from Freeman's incomplete response to the question on voir dire.
In Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970), the Court stated:
 "There is broad support for the proposition that the trial court's application of the probable prejudice test is subject to review only for abuse of discretion. . . .
". . . .
 "This rule comports with logic and common sense. The trial judge heard the questions posed on voir dire and answers thereto. He is in the best position to make findings on the question of probable prejudice after the testimony is developed orally, or by affidavit, on new trial motion. His conclusions are then subject to our review for abuse of discretion."
 "We said in Morris v. Zac Smith Stationery Co., 274 Ala. 467, 470, 149 So.2d 810, 813:
 "`The trial judge was present in court when the voir dire examinations took place; he was in position to observe the lawyers for both parties during their respective questions to the jurors on voir dire; he heard the tone of their voices and the time given between the questions that elicited answers from the jurors. The clarity of the questions propounded was also addressed to his judgment.'"
286 Ala. at 166-67, 238 So.2d at 335.
We have reviewed the trial court's order, including its express findings on the question of probable prejudice, and, because the trial court was in the best possible position to determine whether there was probable prejudice in this particular case, we hold that the trial court did not abuse its discretion in granting a new trial. Burroughs Corp. v. HallAffiliates, Inc., supra.
The judgment of the trial court is therefore affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON, and BEATTY, JJ., concur. *Page 548