Melvin Randall Nix and Stephanie Paulette Nix sued Helen Keller Memorial Hospital ("Helen Keller Hospital"); Dr. Joel Powell; *Page 720 
Phyllis Melton, R.N.; Judy Britton, R.N.; Jeannie Williams, R.N.; Dr. Bill Vermillion; Dr. Wayne Melvin; Florence Clinic, Inc.; and Florence Emergency Physicians, P.C., alleging medical malpractice. The Nixes alleged medical malpractice regarding the birth of their son Matthew; their damages claims related to the alleged malpractice and to his later treatment for a seizure disorder that the Nixes contended was caused by that alleged malpractice. The jury returned a verdict in favor of all defendants. The Nixes moved for a new trial, alleging that they had been prejudiced by the failure of certain jurors to answer questions during voir dire examination. The trial court granted the Nixes a new trial against Dr. Powell, Helen Keller Hospital, Nurse Williams, Nurse Melton, and Nurse Britton, all of whom were involved in the alleged malpractice that occurred at Matthew Nix's birth, but denied the motion as to Dr. Vermillion, Dr. Melvin, Florence Emergency Physicians, P.C., and Florence Clinic, Inc. Dr. Powell, Helen Keller Hospital, Nurse Williams, Nurse Melton, and Nurse Britton appeal.[1]
The dispositive issue is whether the trial court abused its discretion in finding that the Nixes had been prejudiced by the failure of jurors Joan Curtis and Mary Smith to respond to certain questions during voir dire.
 Juror Joan Curtis
During voir dire examination of the prospective jurors, an attorney for the Nixes asked the following question:
 "Let me read you some of the lawyers in [the law firm of Almon, McAlister, Ashe, Baccus, and Tanner] and see if these people ring a bell with you: Vincent McAlister, if any of you know or have you been represented by him please let me know or any member of your immediate family, to your knowledge, been represented by these lawyers: Vincent McAlister, Steve Baccus. . . ."
Later in voir dire, the following questions were asked:
 "Have any of you ever been a defendant in a lawsuit, that is, the person against whom suit is brought for personal injury or property damage or money damages? . . . What about members of your family? Have any of them ever been sued or claimed against for personal injury or property damage to your knowledge?"
Juror Joan Curtis did not respond to either question. However, after trial, it was discovered that in 1993 her brother, John Wayne Thompson, had been represented by Steve Baccus, a member of the law firm that represented one of the defendants in this case. In the hearing on the Nixes' motion for new trial, Curtis stated that she speaks with her brother approximately every three months and that they regularly see each other during the Thanksgiving and Christmas holidays. She testified that she had not known that he had been represented by Steven Baccus and that she had little knowledge about an accident that had led to Baccus's representation of Thompson. Curtis's pertinent testimony at the hearing on the Nixes' motion for new trial was as follows:
 "Q. Now, you, of course, know about the traffic accident resulting in a death that was the subject matter of litigation, don't you?
 "A. I know of it. I don't know any details or nothing.
"Q. Did you read about it in the paper?
"A. No, sir.
"Q. How did you know about it?
"A. Just from hearing about it.
"Q. Did you discuss it with your brother?
"A. I did not.
". . . .
"A. Never has he mentioned it to me, never.
 "Q. Of course, you knew that your brother was a named defendant in that lawsuit, didn't you?
"A. I did not know that. *Page 721 
 "Q. Are you testifying under oath, Ms. Curtis, that you did not know he had been sued?
 "A. Right. I just knew he was involved, but I didn't know the charges or nothing about it.
". . . .
 "A. [I knew he was involved] [b]ecause he was at work that day it happened.
". . . .
 "A. I just heard about it. Not through him, I just heard about it.
". . . .
 "Q. Are you testifying under oath that you knew that your brother was involved in an accident — somebody told you that he was involved in an accident, you knew it was a death, but that you never discussed that with your brother?
"A. Never.
 "Q. Never asked him about what happened or what he knew about it and so forth?
"A. Sure did not.
". . . .
 "A. . . . I just knew he was involved in a wreck — I mean an accident. I don't know anything about it, nothing about it.
 "Q. Well, did you know that Steve Baccus, who is Mr. Ashe's law partner, had represented your brother in that lawsuit?
"A. I did not.
". . . .
"A. I don't know Mr. Baccus.
". . . .
 "Q. And it's your testimony that that was never mentioned at Christmas or Thanksgiving or anything like that?
"A. Never.
". . . .
 "Q. . . . Is it your testimony under oath that you saw your brother at Christmas-time and there was no mention in any shape, form or fashion directly or indirectly about the fact that this multi-million dollar lawsuit had been settled the month previous for over $1,000,000 where your brother was a defendant?
"A. That's correct, not one word."
 Juror Mary Smith
An attorney for the Nixes also asked the following question during voir dire:
 "Next I'm going to get into health care providers and I may leave out somebody that you think is a health care provider, but I'm going to give you some basic areas that I'm talking about. I'm talking about nurses, either registered nurses or LPNs, physical therapists, and I know we have a physical therapist sitting here on the jury, I think, respiratory therapist, anybody that's in the business of giving health care to individuals. Any of you related to such a person?"
Juror Mary Smith did not respond to this question. However, it was discovered after trial that Smith's sister, Barbara Johnson, had been employed by Helen Keller Hospital as an emergency medical technician on an ambulance team from May 1989 until December 1990, and that Johnson and her husband had since worked for a volunteer ambulance service. Smith testified at the hearing on the motion for new trial that, until after the trial, she had forgotten that Johnson had worked for Helen Keller Hospital. However, Smith admitted that while serving as a juror during the trial she had known that Johnson had worked for the county volunteer ambulance service. Smith's pertinent testimony at the hearing on the motion for new trial was as follows:
 "Q. You knew that your sister was an employee at [Helen Keller Hospital] sometime during 1989 until December of 1990, did you not?
 "A. I forgot all about that, I'm sorry. I did forget. Since it's been brought up I know that she did. But I had forgotten about her doing that.
". . . .
 "Q. Do you have any explanation or justification as to how you could forget that?
 "A. It just never came to mind. I never thought of it. I didn't think Barbara had worked there that long.
". . . .
 "A. Until then I hadn't thought of it, and then when Mr. Ashe told me about it I *Page 722 
said, 'she didn't work there but a month or two,' because that's when it hit me that she had worked there. I had forgotten until then.
". . . .
 "Q. Ms. Smith, when you were a member of the jury venire before this trial began, at that time you knew that your sister had worked for the Colbert County Rescue Squad for several years, didn't you?
"A. Yes, as a volunteer. . . .
". . . .
 "Q. You did not affirmatively tell us that your sister had done volunteer work for the Colbert County Rescue Squad, did you?
 "A. No. I didn't remember that question being asked."
Whether to grant or deny a motion for new trial rests within the sound discretion of the trial court, and this Court will not reverse a ruling in that regard unless it finds that the trial court's ruling constituted an abuse of that discretion. Without a showing of such an abuse, the trial court's ruling must be affirmed. Blackmon v. King Metals Co., 553 So.2d 105
(Ala. 1989); Menefee v. Veal, 484 So.2d 437 (Ala. 1986); GreenTree Acceptance, Inc. v. Blalock, 525 So.2d 1366 (Ala. 1988).
In considering a motion for a new trial based on allegations of improper responses or a lack of responses by veniremembers during voir dire examination, the trial court must inquire as to whether the movant was probably prejudiced. If probable prejudice resulted from the veniremember's actions during voir dire, the motion for new trial must be granted. Freeman v.Hall, 286 Ala. 161, 238 So.2d 330 (1970). In Freeman, the Court noted some of the factors that may be considered pertinent to the trial court's determination of prejudice. Among those factors are "temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about." Freeman,286 Ala. at 167, 238 So.2d at 335. The question of prejudice is a determination to be made within the trial court's discretion.Williston v. Ard, 611 So.2d 274 (Ala. 1992); Eaton v. Horton,565 So.2d 183 (Ala. 1990).
The Freeman Court stated the following in regard to an appellate court's deference to the trial court's discretion in deciding whether to grant or to deny a motion for new trial based on alleged improper actions occurring during voir dire:
 "The trial judge [hears] the questions posed on voir dire and answers thereto. He is in the best position to make findings on the question of probable prejudice after the testimony is developed orally, or by affidavit, on new trial motion. His conclusions are then subject to our review for abuse of discretion.
 "We said in Morris v. Zac Smith Stationery Co., 274 Ala. 467, 470, 149 So.2d 810, 813 [1963]:
 " 'The trial judge was present in court when the voir dire examinations took place; he was in position to observe the lawyers for both parties during their respective questions to the jurors on voir dire; he heard the tone of their voices and the time given between the questions that elicited answers from the jurors. The clarity of the questions propounded was also addressed to his judgment.' "
Freeman, 286 Ala. at 167, 238 So.2d at 335.
In granting the motion for new trial the trial court stated:
 "[T]he Court finds that the failure of juror Curtis to answer the plaintiff's attorney's question with respect to whether or not any immediate family member had been represented by an attorney in the defendant's attorney's law firm, and also whether or not any prospective juror's immediate family had been a defendant in a lawsuit was not remote, being less than two months prior to the start of the trial of the instant cause. The Court further finds that the plaintiff's attorney's questions were not ambiguous in any way whatsoever. The Court also finds that it is materially important to the plaintiff whether or not a juror or her immediate *Page 723 
family has been a defendant in a lawsuit or has been represented by the opposing law firm. Although juror Curtis indicated on the hearing of the motion for a new trial that she did not recollect that her brother had been represented by Mr. Baccus or that he had been a defendant in the lawsuit, she did indicate that she knew that her brother was involved.
 "With respect to juror Mary Smith failing to indicate that her sister had been an emergency medical technician for defendant Helen Keller Memorial Hospital (Plaintiff's Exhibit 2), or for that matter with another ambulance service, the Court finds that that information too was not remote, said sister having been involved as an emergency medical technician with Helen Keller Memorial Hospital from 1989 through the month of December of 1990, and the Court noting that the plaintiff's allegations concern alleged acts of malpractice commencing September 18, 1987, and ending January 23, 1990. The Court further finds that said information is material to the plaintiff's exercise of his discretion in the use of his peremptory strikes and finds that said information was prejudicial to the plaintiff and failure to have said questions answered truthfully denied the plaintiff the right to exercise his discretion wisely in the use of peremptory strikes."
We conclude from reviewing the record that the trial court did not abuse its discretion in ordering the new trial. The trial court was able to observe the mannerisms, inflections in voice, and other characteristics of the jurors whose answers were at issue — in other words, things that could reflect upon the jurors' credibility but that are beyond this Court's inherently limited ability to review by appellate transcript — and it found that the Nixes were probably prejudiced by the failure of those jurors to properly respond to the voir dire questioning.
Neither question at issue in this case was ambiguous. Both involved matters of material importance to the Nixes' exercise of their right to use their peremptory challenges in selecting the jury. The trial court did not abuse its discretion, and its order granting a new trial is affirmed.
AFFIRMED.
SHORES and KENNEDY, JJ., concur.
MADDOX and HOUSTON, JJ., concur specially.
[1] We note that the Nixes did not appeal from that portion of the trial court's order denying their motion for new trial as to defendants Dr. Vermillion, Dr. Melvin, Florence Emergency Physicians, P.C., and Florence Clinic, Inc. Therefore, the propriety of the trial court's decision in that regard is not before this Court.