PER CURIAM.
The defendant, Jo Ann Hood, appeals from the trial court’s order granting a motion for a new trial filed by the plaintiff, Elizabeth McElroy, as personal representative of the estate of Austin Taylor Terry, deceased (“the estate”). We reverse and remand.
I. Factual Background and Procedural History
On September 6, 2002, the mother of Austin Taylor Terry, who was then 12 months old, admitted him to the Children’s Hospital of Alabama. A social worker at the hospital notified the Jefferson County Department of Human Resources (“DHR”) that Terry had suffered “suspicious non-accidental injuries,” designated the case as one that required an “immediate” response, and reported to Yvonne Summer-lin, a service supervisor at DHR, that she suspected child abuse and neglect and that Terry should not be allowed to return home with his mother until DHR could *327 conduct an investigation. Terry’s father, who was divorced from Terry’s mother, also contacted DHR after he learned of his son’s hospitalization. He spoke with Tammie Godfrey, an after-hours on-call DHR service worker, who met with Terry’s father and mother at the hospital and learned that Chris Wesson, the mother’s boyfriend, had been in the house with Terry on September 6. Godfrey recommended that Terry not be allowed to return home when he was discharged from the hospital and submitted her findings to DHR in a report.
On Monday, September 9, Summerlin, who had not seen Godfrey’s report, assigned Hood to investigate Terry’s suspected abuse and informed Children’s Hospital that Terry could go home with his mother when he was discharged. On September 10, Hood visited Terry and his mother at their house. Wesson was there at the time of Hood’s visit. Hood interviewed Terry’s mother and Wesson and also telephoned Martha Musso, Terry’s great-grandmother. Based on her initial investigation, Hood determined that it was safe to leave Terry in his mother’s care. On November 3, 2002, Terry died from brain injuries caused by blows to his head inflicted by Wesson.
Both of Terry’s parents filed separate wrongful-death actions. Terry’s father was substituted as the plaintiff in the mother’s action and his separate action was dismissed. Doris Williford, the Jefferson County administrator, was later substituted as the plaintiff in her capacity as the personal representative of the estate. The wrongful-death action named as defendants Wesson, Children’s Hospital, Hood, and other DHR social workers. Williford served as the plaintiff in this case until her death on December 9, 2009. On December 17, 2009, the Jefferson Probate Court appointed Elizabeth McElroy as the new county administrator. On May 14, 2010, counsel for the estate filed in the trial court a motion to substitute McElroy as its personal representative. On May 17, 2010, the trial court entered an order substituting Elizabeth McElroy, as the personal representative of the estate, as the plaintiff in this case. The claims against all the defendants except Wesson and Hood were disposed of before trial. See Ex parte Children’s Hosp. of Alabama, 931 So.2d 1 (Ala.2005), and Ex parte Sumerlin, 26 So.3d 1178 (Ala.2009), for additional factual background.
The estate proceeded to trial against Wesson, who is currently serving a 20-year prison sentence for manslaughter as a result of Terry’s death, and Hood. The jury returned a verdict in favor of the estate and awarded $25,000 in damages against Wesson and Hood. The estate filed a motion for a new trial, arguing that the jury considered extraneous prejudicial information in its deliberations, that the jury’s award represented an improper apportionment of damages among tortfea-sors, that the jury entered an improper quotient verdict, that the damages award was inadequate, that a juror’s failure to respond to a voir dire question prevented the estate from using its jury strikes effectively because it would have used a peremptory strike to remove the juror had the juror answered the question, and that the cumulative effect of all the grounds for a new trial were such that the ends of justice would be served by granting the estate a new trial. After Hood filed her opposition to the estate’s postjudgment motion and the trial court held a hearing, the trial court granted the motion on the ground that the estate was probably prejudiced in its right to a fair and impartial trial as a result of the juror’s failure to respond to the voir dire question. Hood appealed.
*328 II. Standard of Review
In reviewing a trial court’s order granting a motion for a new trial based on a juror’s failure to answer a question truthfully during voir dire, this Court must ascertain whether the trial court exceeded its discretion in granting the motion.
“ ‘The proper inquiry on a motion for a new trial based on improper or nonexistent responses to voir dire questions is whether the response, or the lack of response, resulted in probable prejudice to the movant. Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970). Not every failure of a prospective juror to respond correctly to a voir dire question will entitle the losing party to a new trial. Wallace v. Campbell, 475 So.2d 521 (Ala.1985).
“ ‘The determination of whether the complaining party was prejudiced by a juror’s failure to answer voir dire questions is a matter within the discretion of the trial court and will not be reversed unless the court has abused its discretion. Freeman, supra.’
“Union Mortgage Co. v. Barlow, 595 So.2d 1335, 1342 (Ala.1992). Questions of law and the application of the law to the facts presented are to be reviewed de novo. Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996).”
Holly v. Huntsville Hosp., 925 So.2d 160, 162-63 (Ala.2005).
III. Analysis
As the estate began its voir dire examination of the jury, the following colloquy occurred between counsel for the estate and the venire:
“[COUNSEL]: Now, what I want to tell you where you will understand my questions to you is that the DHR is the Department of Human Resources, which is an agency of the State of Alabama. Does everybody know what DHR is? Anybody not know what DHR is? And does everybody realize that the DHR’s responsibility to every citizen in the State of Alabama, Jefferson County, is to protect children from abuse? Everybody know that? That their responsibility through policies, procedures, customs, practices is to protect our children from abuse. We all understand that; is that correct?
“And what the case is about is that in this case we have charged Jo Ann Hood Langford, who at that time — you have to keep focused on the name Jo Ann Hood because that is what is going to be in the record, but Jo Ann Hood Langford had the responsibility for the DHR to protect, investigate, and determine the appropriate measures to protect this 14-month-old baby from being beaten to death. Okay.
“Now, there were policies and procedures in place to have protected this baby, and our allegations are had she done her job, that 14-[month-]old baby would now be about six years old and not dead. Now, I want to tell you, those are allegations. Okay. But I tell you that because that’s why I’m going to ask you some questions that are sensitive, and the first question I want to ask everybody [is] how many of you have children? Hold your hands up. Anybody does not have children? Okay. How many of you have grandchildren? How many of you have ever been defendants in a lawsuit? Had somebody sue you for personal injuries ? And I’m not talking about a case like this. It could have been a car wreck. Yes? And I’m sorry, let me explain something. If /all don’t mind when I ask you questions, if you would stand up and say your name because the court reporter needs to get *329 it, and I’m not holding my piece of paper that says where you are sitting.
“THE JUROR [D.O.]: The description or what do you need beyond that?
“[COUNSEL]: I just need to ask you were you the defendant in the case?
“THE JUROR: Well, my company. I’m in the trucking business, and my company was.
“[COUNSEL]: [Juror D.O.], being in the trucking business, and I imagine that you have to protect yourself from liability, and you have to have things in place to protect yourself from liability, and from time to time you have been sued, correct, or somebody has made a claim against you?
“THE JUROR: Yes, sir.
“[COUNSEL]: And what I want to ask you about is that business that you are in, and the experiences that you have had and the litigations that you have had to go through, does that make you feel like you would lean toward one side or the other, that you would lean toward the defendants because of maybe your own frustration with being in litigation?
“THE JUROR: Well, I would hope not. I would hope not because I guess I have only been to trial one time, and that particular instance received a verdict in my favor, so—
“[COUNSEL]: But you can understand why if you had something in your heart, something in your mind — and I will ask another question, but just makes you suspicious of plaintiffs or just don’t like them, don’t like plaintiffs lawyers, that I would have to convince you ■with more evidence than they would have to convince you?
“THE JUROR: Well, I believe I can hear a case and listen to the facts and make a determination based on the facts.
“[COUNSEL]: All right, sir. Thank you. Since that came out, let me ask you this question. How many of you— this has happened for the last fifteen years. How many of you have heard on the radio, on the television, in the newspaper, about frivolous lawsuits and bad plaintiffs lawyers and bad plaintiffs and that the whole system, this whole jury system isn’t any good? Hold your hands up if you have heard it. And how many of you realize that those ads and those things that are said were paid for? Do you realize that? Somebody paid for them. And do you realize that the people, everybody realize that the people that paid for them, it was for their self-interest that they paid for them and not a study or any scientific evidence or any real evidence about what happens in the courtroom? Does everybody realize that, and that they weren’t sworn to tell the truth? Well, I want to ask you this. How many of you have been influenced by those ads and propaganda and statements that were paid for by the business counsel, by the insurance companies, by big business and — I’m sorry, [D.O.], I don’t know if your trucking company has paid for it or not, but you didn’t, did you?
“THE JUROR: No, sir.
“[COUNSEL]: But how many of you have been affected by that? How many of you, because of those ads, Doris Willi-ford and the fact that this baby was beaten to death and DHR didn’t do what they were supposed to do, what they were supposed to do protect the child, how many of you because of that would say I still can’t find in favor of the plaintiff in any case? Because you see, I will admit to you that there have been frivolous lawsuits filed. Any of you ever sat in on a jury when it was a frivolous *330 lawsuit? I just want to tell you, this isn’t a frivolous lawsuit. Okay.
“Now, in this type of case, in this type of case, and I don’t know if the judge told you this, but there are only one type of damages that can be returned, and that’s because the State of Alabama allows only one type of damages in a wrongful-death case, and those are punitive damages. Okay. [Voir dire examination continues regarding punitive damages.]”
The estate later learned that another juror, J.S., had been a defendant in two collection actions in small-claims court in which a consent or a default judgment had been entered. As indicated, Juror J.S. did not respond when counsel for the estate asked whether any juror had ever been a defendant in a lawsuit. In its post-judgment motion, the estate argued that because Juror J.S. had been a defendant in two cases in which the plaintiff was seeking money damages, the estate would have struck Juror J.S. from the jury if J.S. had answered the question accurately. At the hearing on the postjudgment motion, counsel for the estate explained that the estate had used its first peremptory strike to remove Juror D.O. and that it would have struck Juror J.S., who served on the jury, if it had known that J.S. had also been a defendant in two lawsuits. The estate argued that Juror J.S.’s failure to respond to the voir dire question had substantially prejudiced the estate.
The trial court entered a written order granting the estate’s motion for a new trial. That order stated, in pertinent part:
“[The estate] has raised four grounds in support of [its] motion for new trial. The first ground relates to the misconduct of a juror in failing to respond to voir dire. Not every failure of a prospective juror to respond correctly to a voir dire question will result in a new trial. McKowan v. Bentley, 773 So.2d 990, 996 (Ala.1999). However, where improper responses or lack of responses by prospective jurors on voir dire result in probable prejudice to the movant, a new trial is warranted. Freeman v. Hall, 286 Ala. 161, 166, 238 So.2d 330, 335 (1970). The test is not whether the movant was prejudiced but whether he might have been. Ex parte O’Leary, 438 So.2d 1372 (Ala.1983). The Alabama Supreme Court has said that the 'trial court is in the best possible position to determine whether there was probable prejudice as a result of a juror’s failure to respond to questions during voir dire.’ Land & Associates, Inc. v. Simmons, 562 So.2d 140, 149 (Ala.1989). ‘The trial judge [hears] the questions on voir dire and answers thereto. He is in the best position to make findings on the question of probable prejudice after the testimony is developed orally, or by affidavit, on new trial motion.’ Freeman, [286 Ala. at 167,] 238 So.2d at 335.
“In determining whether a juror’s silence resulted in probable prejudice to the movant, the Alabama Supreme Court has said that a trial court should consider a broad range of factors. Freeman, [286 Ala. at 167,] 238 So.2d at 336. The Court has never provided an exhaustive list but has said that the factors vary from case to case. Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 5 (Ala.2007). Some of the factors considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in failing to answer, the failure of the juror to recollect and the materiality of the matter inquired about. Id.
“During voir dire, [the estate’s] counsel made the following inquiry of the *331 jury venire: ‘How many of you have ever been Defendants in a lawsuit?’ Juror J.S. failed to disclose that she had been a Defendant in separate lawsuits in 2007 and 2008. She was sued in 2007 and a consent judgment was entered against her in the amount of $1,877. Juror J.S.’s wages were garnished on this judgment two weeks after the trial of this case. Juror J.S. was also sued in August of 2008. A default judgment was entered against her in the amount of $777.20 on October 29, 2008.
“The initial prejudice factor considers the time period in which the matter inquired about occurred to determine if it was ‘temporally remote.’ Freeman, [286 Ala. at 167,] 238 So.2d at 336. The Alabama Supreme Court has concluded that a five-year time frame should not be considered remote. Holly v. Huntsville Hospital, 925 So.2d 160 (Ala.2005). In this case, the matters about which Juror J.S. failed to respond are not matters temporally remote from trial. Juror J.S. was a defendant in lawsuits in 2007 and 2008. The time period was in no way remote and cannot excuse her failure to answer the voir dire question. The Court concludes that this factor weighs in favor of a finding of probable prejudice.
“The next prejudice factor that this Court should consider is the ‘ambiguity of the question propounded’ during voir dire. In Colbert County-Northwest Alabama Healthcare Authority v. Nix, 678 So.2d 719, 720 (Ala.1995), the prospective jurors were asked the following: ‘Have any of you ever been a defendant in a lawsuit, that is, the person against whom the suit is brought for personal injury or property damage or money damage? What about members of your family? Have any of them been sued or claimed against for personal injury or property damage to your knowledge?’ One of the jurors did not respond to either question. The Alabama Supreme Court affirmed the trial court’s decision to grant a new trial stating that ‘[n]either question at issue in this case was ambiguous.’ 678 So.2d at 722. This Court was present when the voir dire examination took place. The Court observed the lawyers for both parties during their respective questions to the jurors on voir dire. The Court heard the tone of their voices and the time given between the questions that elicited answers from the jurors. There was nothing ambiguous or unclear about the question posed by [the estate’s] lawyers to the jurors in this case regarding whether they had ever been a defendant in a lawsuit. This factor weighs in favor of a finding of probable prejudice.
“Another prejudice factor suggests examining the possibility of ‘inadvertence or willfulness’ in a prospective juror’s failure to disclose certain information. Freeman, [286 Ala. at 167,] 238 So.2d at 336. In Gold Kist, Inc. v. Brown, 495 So.2d 540, 544 (Ala.1986), the Court recognized that an attempt to peer into the mind of a juror would be futile but explained ‘that it can be inferred from such circumstantial evidence that [the juror’s] failure to fully answer the question was not inadvertent or the result of [the juror’s] failure to recollect.’ The fact that less than two years had lapsed between the filing of the first lawsuit and her jury service in this case negates any reasonable inference that Juror J.S.’s failure to remember was mere inadvertence. Also, the judgment in the 2007 case was a consent judgment. This factor weighs in favor of a finding of probable prejudice.
“The last prejudice factor that this Court must consider is the ‘materiality of the matter inquired about.’ Free *332 man, [286 Ala. at 167,] 238 So.2d at 336. In the Gold Kist case, the Alabama Supreme Court held that the trial court did not exceed its discretion in granting a new trial and stated that ‘information sought on voir dire is material if the questioning attorney considers it important in making the decision to excuse a prospective juror.’ 496 So.2d at 544. Defendant Hood argued that because Juror J.S.’s lawsuits were small claims district court cases that her failure to disclose them could not possibly work probable prejudice to the [estate]. This Court disagrees. A prospective juror’s involvement as the defendant in any type of lawsuit is of profound importance and materiality to the plaintiff. Information about Juror J.S.’s having been a defendant in two other lawsuits was absolutely material. This is a significant factor in a lawyer’s decision to use a peremptory strike against a potential juror.
“In fact, in the case of Colbert County-Northwest Alabama Healthcare Authority v. Nix, 678 So.2d 719, 722-23 (Ala.1995), the Alabama Supreme Court agreed with the trial court that it ‘was materially important to the plaintiff whether or not a juror or her immediate family had been a defendant in a lawsuit.’ The Court has considered the representations by [the estate’s] counsel who averred that she would have used her peremptory strike to remove Juror J.S. from the petit jury that eventually rendered the verdict had she honestly and accurately disclosed the facts of her being a defendant. The Court also finds it significant that the [estate] struck Juror D.O. with [its] very first strike. Juror D.O. was the only juror who indicated that he had been a defendant in a lawsuit. This factor weighs in favor of a finding of probable prejudice.
“Under these circumstances, the Court concludes that the factors weigh heavily in favor of a finding that the [estate] was probably prejudiced in [its] right to a fair and impartial trial as a result of Juror J.S.’s failure to respond to the voir dire question of whether she had been a defendant in a lawsuit. [The estate’s] motion for new trial is granted on this ground.”
Although the parties in a case are entitled to truthful answers to questions asked on voir dire so that they can make wise decisions in exercising their peremptory strikes, not every failure of a juror to respond properly to a question propounded during voir dire automatically entitles a party to a new trial. Freeman v. Hall, 286 Ala. 161, 166, 238 So.2d 330, 335 (1970). “The proper inquiry on a motion for a new trial based on improper or nonexistent responses to voir dire questions is whether the response, or the lack of response, resulted in probable prejudice to the mov-ant.” Union Mortg. Co. v. Barlow, 595 So.2d 1335, 1342 (Ala.1992). The Court further explained the “probable-prejudice” inquiry:
“The determination of whether the complaining party was prejudiced by a juror’s failure to answer voir dire questions is a matter within the discretion of the trial court and will not be reversed unless the court has [exceeded] its discretion. Some of the factors that this Court has approved for using to determine whether there was probable prejudice include: ‘temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.’ ”
595 So.2d at 1342-43 (quoting Freeman v. Hall, 286 Ala. at 167, 238 So.2d at 336).
*333 The question before us is whether the Freeman factors justify the trial court’s decision to grant a new trial on the ground that Juror J.S. failed to answer certain voir dire questions. We are hard-pressed in this case to conclude that any of the Freeman factors provide meaningful support for such a result. Even if a new trial were warranted on one of the other three grounds argued to the trial court, we cannot conclude that, even under the exceeds-its-discretion standard by which we evaluate the trial court’s decision to grant a new trial, Juror J.S.’s failure to reveal, in response to the particular questions asked, that she had been sued for approximately $2,650 in two apparently uncontested small-claims-eourt collection actions provides adequate support for a finding of “probable prejudice” so as to warrant retrying this case.
Our disagreement with the trial court’s decision focuses primarily on the factors of “ambiguity of the question propounded” and the “materiality of the matter inquired about.” As to ambiguity, we consider the particular question at issue:
“How many of you have ever been defendants in a lawsuit? Had somebody sue you for personal injuries? And I’m not talking about a case like this. It could have been a car wreck.”
(Emphasis added.)
Even if there was a gap in time between the first and second questions posed — a possibility we note has not been asserted by the estate — that a nonlawyer who, for all that appears, has no personal experience with the civil justice system other than two uncontested “collection actions” might fail to answer affirmatively a question as to whether she has been a “defendant[ ] in a lawsuit” is not unrealistic. In any event, the inquiry as to having been a “defendant] in a lawsuit” was followed directly by the apparently explanatory companion question of whether the juror had “[h]ad somebody sue you for personal injuries?” This in the context of a lawsuit the jurors already knew involved a claim “for personal injuries,” and for significant money damages at that. Further, the only example given by the voir dire examiner was that of a lawsuit involving “a car wreck.” Considering the query in its entirety, we conclude that in fact it was ambiguous as to whether the questioner was seeking information on any lawsuit of any nature or only lawsuits where a juror had been sued “for personal injuries.”
Moreover, it is particularly understandable that this ambiguity could manifest itself in a failure of a juror to stand and respond affirmatively when the only time she had ever been a defendant in a lawsuit was in two small-claims-court actions that did not involve personal injuries but merely the collection of debt that was not contested.
Also, as to the “ambiguity” factor, we find the case relied upon by the trial court — Colbert County-Northwest Alabama Healthcare Authority v. Nix, 678 So.2d 719 (Ala.1995) — to be much different than the present case. First, the question in that case did not contain any suggestions that the questioner was concerned only about cases where the juror had been sued “for personal injuries.” Specifically, the question in Nix was as follows: “ ‘Have any of you ever been a defendant in a lawsuit, that is the person against whom the suit is brought for personal injury or property damage or money damage? ’ ” 678 So.2d at 720.
Furthermore, contrary to the trial court’s explanation of the holding in Nix, this question came into play with respect to only one juror. Moreover, it was not the only — indeed for all that appears it was not the primary — question that this juror, Curtis, failed to answer. Equally or *334 more important to the trial court’s analysis in Nix was the fact that Juror Curtis also failed to answer the following question: “[H]ave you ... or any member of your immediate family, to your knowledge, been represented by [an attorney in the law firm that represents one of the defendants, including] Steve Baccus?” 678 So.2d at 720. Despite the fact that Juror Curtis had a brother who had been represented by Baccus, an attorney for the defendant in that case, Juror Curtis failed to respond to the question.[1]
The other juror at issue in Nix, Juror Smith, failed to answer a different question altogether, namely whether she or any person to whom she was “related” had ever worked as “a health care provider”— “anybody that’s in the business of giving health care to individuals.” 678 So.2d at
721. The action in Nix was an action against a health-care provider, and Smith failed to reveal that her sister had been employed as an emergency medical technician by a hospital, and, furthermore, she failed to reveal that her husband had worked for a volunteer ambulance service.
The difference between the circumstances in Nix and the circumstances in this case only widens when one considers the element of “materiality.” The present action involves a wrongful death in which the damages claim was substantial. Similarly, in Nix, the action in which Juror Curtis’s brother had been a defendant was a claim involving a wrongful death; that case was settled for an amount in excess of $1,000,000. In contrast, in the present case, Juror J.S.’s failure to respond to the question at issue concerned the fact that she had been named as a defendant in two debt-collection actions in small-claims court that apparently had resulted in uncontested judgments against her totaling less than $2,700.
Moreover, it is important to note how the case of Gold Kist, Inc. v. Brown, 495 So.2d 540 (Ala.1986), fails to support the trial court’s conclusions as to materiality in the manner suggested by that court.
In Gold Kist, the plaintiff sued the driver of an 18-wheel truck based on personal injuries that resulted from a collision that the driver allegedly caused between two other vehicles. The juror in question worked as a truck driver, driving trucks ranging in size from a “pick-up to 2-ton” trucks. 495 So.2d at 542. Despite this obviously salient fact, on voir dire the juror represented merely that he worked in “the storeroom” at a supply company. Id.
Aside from this factual difference between Gold Kist and the present case, we note the trial court’s reliance upon it for the proposition that “ ‘information sought on voir dire is material if the questioning attorney considers it important in making the decision to excuse a prospective juror.’ ” (Quoted by the trial court from this Court’s opinion in Gold Kist, 495 So.2d at 546.) The Court in Gold Kist cited no authority for the stated principle, however. Moreover, it is counterintuitive, to say the least, to suggest that trial and appellate courts must accept the subject of a voir dire question a juror fails to answer as *335 “material” so long as the attorney who seeks a new trial claims it was material to him or her.
In point of fact, not even in Gold Kist did this Court consider that it had announced a rule of dependence upon the subjective assessment of the movant’s attorney. If the Court in Gold Kist truly intended to announce a rule of subjective materiality of the nature expressed by the trial court here, the Gold Kist Court could have, and should have, stopped its analysis after the above-quoted statement. Instead, it proceeded to conduct its own analysis of whether the subject matter of the voir dire question and the omitted answer was material in an objective sense. The only fair and logical reading of this portion of the Gold Kist opinion, therefore, is that a failure to answer provides no basis for requiring a new trial on the ground that it prejudicially affected the exercise of peremptory strikes unless that failure is material in both an objective sense and in the sense that the attorney for the moving party represents that it would have made a difference in the manner in which he or she would have exercised peremptory strikes. This conclusion is in fact borne out by the approval elsewhere in the Gold Kist opinion of the following definition for “materiality”: “‘A material fact can be defined as one which an attorney acting as a reasonably competent attorney, would consider important in making the decision whether or not to excuse a prospective juror.’ ” 495 So.2d at 545 (quoting the trial court’s order).
Since Gold Kist, this Court has reaffirmed its understanding that a nondisclosure by a juror must be material in an objective sense as well as a subjective sense. In Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1 (Ala.2007), we explained:
“In the context of a juror’s failure to disclose requested information, ‘a material fact [is] “ ‘one which an attorney!,] acting as a reasonably competent attorney, would consider important in making the decision whether or not to excuse a prospective juror.’ ” ’ Conference America, Inc. v. Telecommunications Coop. Network, Inc., 885 So.2d 772, 777 (Ala. 2003) (quoting Gold Kist v. Brown, 495 So.2d 540, 545 (Ala.1986)). In considering the materiality of a fact, the court may consider ‘the obvious tendency of the true facts to bias the juror,’ as well as ‘direct testimony of trial counsel that the true facts would have prompted a challenge against the juror.’ Ex parte Dobyne, 805 So.2d 763, 773 (Ala.2001).”
964 So.2d at 5 (emphasis added). See also Conference America, Inc. v. Telecommunications Coop. Network, Inc., 885 So.2d 772, 777 (Ala.2003) (noting that in Gold Kist “this Court quoted the trial court’s definition of a material fact as ‘ “one which an attorney!,] acting as a reasonably competent attorney, would consider important in making the decision whether or not to excuse a prospective juror.” ’ 495 So.2d at 545.”). Moreover, in this Court’s recent decision of Ex parte Dixon, 55 So.3d 1257 (Ala.2010), we referred to trial counsel’s testimony that he would have challenged the juror for cause or exercised one of his peremptory challenges as simply “prima facie evidence of prejudice” to the defendant. 55 So.3d at 1263 (emphasis added). We further explained that “[t]he materiality of [the juror’s] failure to respond to the question and the prejudice to [the defendant] are evidenced by the testimony of [the defendant’s] trial counsel and by the nature of the information not disclosed.” Id. (emphasis added).
Finally, we address the third element described in Freeman, the “inadvertence or willfulness” of the juror in “falsi *336 fying or failing to answer” a voir dire question. As to this element, we note simply that the difference in the wording of the questions at issue and the nature of the judicial proceeding with which Juror J.S. had been involved is such that we see little or no basis for inferring that Juror J.S. knowingly and willfully violated her oath when she failed to disclose the collection action against her. That is, we do not find in the record before us facts sufficient to support a finding that Juror J.S. was guilty of “willful[ly] ... falsifying or failing to answer” those questions.[2]
IV. Conclusion
Trials are significant undertakings. They almost invariably involve a significant investment of judicial resources and significant emotional, financial, and temporal investments on the part of the parties, attorneys, and witnesses. No trial is perfect. In the interest of achieving an appropriate measure of efficacy and finality in our system of dispute resolution, we cannot insist upon the elimination of all flaws. The question whether the “process” afforded is the process that is “due” can be answered in the affirmative where the flaws complained of cannot be considered to have unduly or materially impeded the search for the truth and a just result.
As the United States Supreme Court has put it, “ ‘[a] defendant is entitled to a fair trial but not a perfect one,’ for there are no perfect trials.” Brown v. United States, 411 U.S. 223, 231-32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (quoting Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), quoting in turn Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953)). Even as to criminal proceedings, “the framers of the constitution, in their wisdom, did not require that ... trials be judicially perfect, but guaranteed a fair trial, measured by [r]easonable standards.” State v. Willis, 67 Wash.2d 681, 689, 409 P.2d 669, 673 (1966).
“The question is not whether the trial was perfect but rather whether defendant received a fair trial. The question of whether defendant received a fair trial must be determined not from isolated instances during the course of that trial but the entire proceeding must be considered and the determination made from the totality of the facts and circumstances in a given case.”
People v. Brown, 30 Ill.App.3d 732, 733-34, 332 N.E.2d 580, 582 (1975).
Based on our review of the specific facts of this case, and a comparison of them to the specific facts and holdings in cases cited by the trial court, we cannot conclude that a sufficient showing of “probable prejudice” was made in relation to the voir dire questioning of Juror J.S. to justify a decision to put all concerned to the time, effort, and expense of retrying this case. If there was any aspect of the trial that materially impeded the search for a just result, we cannot conclude that it was the failure of Juror J.S. to disclose, in response to the voir dire questions asked, the fact of two collection actions against her. Because it is based solely on this failure by Juror J.S., we conclude that the particular order that is the subject of this appeal must be reversed.
*337 Our review of the other grounds posited in the estate’s motion for a new trial reveals, however, that each involves questions of fact or mixed questions of law and fact that should be addressed in the first instance by the trial court, rather than this Court. Accordingly, we must remand the case for further proceedings.
REVERSED AND REMANDED:
STUART, BOLIN, MURDOCK, and WISE, JJ., concur.
SHAW, J., concurs in the result.
MALONE, C.J., and WOODALL, PARKER, and MAIN, JJ., dissent.

. Juror Curtis testified that she had not answered the question about whether she or a family member had ever "been a defendant” or had been sued because she did not realize that her brother had been a "defendant” in the action in which Baccus represented him; she testified that she merely understood that he was “involved” in that action. The trial court in reaching its conclusion that a new trial was warranted did not expressly question Juror Curtis’s credibility as to this answer. The court did, however, mention Juror Curtis’s failure to correctly answer this question in conjunction with its discussion of Curtis’s failure to answer the question concerning previous representation of family members by any attorney in the case.

. As to the issue of "temporal remoteness,” the two- to three-year period between the judgments entered against Juror J.S. and the trial of the present case does not necessarily represent the type of temporal remoteness that would prevent Juror J.S.'s failure to answer the question at issue from being pertinent. By the same token, however, we cannot conclude that this two- to three-year period is such that it lends any particular support for a decision to grant a new trial.